Hillsborough
No. 79-333

*In re* ROBERT C.

March 13, 1980

*Thomas D. Rath,* attorney general (*Jeffrey R. Cohen,* attorney, orally), for the State.

*H. Philip Howorth,* corporation counsel, by brief and orally, for the city of Nashua.

GRIMES, C.J.   The issue in this case is whether the district court erred in charging to the State expenses incurred by virtue of the commitment of a juvenile to the New Hampshire Hospital. We hold that it did.

It is conceded that the subject juvenile (hereinafter Robert) was and remains a resident of Nashua, New Hampshire. Sometime in 1977, the Nashua Police, pursuant to RSA 169:3, petitioned the Nashua District Court for a determination whether Robert was a delinquent child in need of supervision. By order dated September 12, 1977, the District Court (*Pantelas,* J.) referred Robert to the New Hampshire Hospital for evaluation, charging the expenses therefor to the State "[p]er N.H. RSA 169:9 . . . ." Upon receipt and review of this report, the district court, by order dated November 4, 1977, ordered Robert placed at the Philbrook Center, a division of the New Hampshire Hospital. That order indicated

neither upon which statutory provision the committal was based, nor which party should bear the expense of Robert's custody.

Thereafter, the State indicated to officials of the city of Nashua (hereinafter the city) that it would seek payment for the cost of Robert's care at the Philbrook facility. In October 1978, counsel for the city sought leave to intervene, praying for a determination, *inter alia*, "[a]s to what persons and authorities should be chargeable for the support of [Robert] at Philbrook . . . ." A hearing was had upon the city's petition to intervene, at which the State was not represented by counsel. In an order dated November 27, 1978, the District Court (*Harkaway*, J.) ruled that insofar as the person chargeable by law with Robert's support, his mother, had no ability to pay, the costs of his care and treatment were chargeable to the State by virtue of RSA 126-A:54 I and II. The court failed to indicate, however, its statutory authority for continuing Robert's committal.

Subsequently, the State filed a motion for modification of the November 27, 1978 order on April 30, 1979, more than four months after the hearing. Although the city objected to the motion on the grounds, *inter alia*, that the bar of *res judicata* applied, the district court granted a hearing to the State on May 25, 1979, at which time counsel were instructed to submit memoranda. By order dated September 19, 1979, the district court affirmed its earlier ruling that pursuant to RSA 126-A:54 I and II, the costs of Robert's care and treatment were properly chargeable to the State. Accordingly, it denied the State's motion to modify. The State timely filed a notice of appeal which was granted by this court.

The city first seeks to avoid consideration of the merits of the State's claim by relying on the doctrine of *res judicata*. It argues that because the State neither sought modification nor appealed within thirty days of the November 27, 1978 order, it may not later revive the issue. We do not find this a proper case in which to invoke the bar of *res judicata*.

■ ■ The district court specifically addressed this issue in its order of September 19, 1979. Although it noted that the city furnished the attorney general's office a copy of its original petition to intervene, court stated:

in view of the serious nature of the issue in this case, this Court feels it is appropriate to reopen the case and consider the arguments which have been made by

counsel in [sic] both sides on the main issue of responsibility for expenses of hospitalization of this juvenile at the State Hospital.

The district court possessed power to consider the State's motion and, if need be, modify its earlier order. *See Coburn v. First Equity Associates,* 116 N.H. 522, 363 A.2d 402 (1976). There we observed "that deserving litigants [should not] be cut off from their day in court." *Id.* at 524, 363 A.2d at 404. More recently, we noted that the twin purposes of the doctrine of *res judicata* were to protect litigants from the burden of relitigating identical issues and to conserve judicial resources by preventing needless litigation. *Cutter v. Durham,* 120 N.H. 110, 411 A.2d 1120 (1980). Although the State had notice of the November 27, 1978 proceeding, it was not represented by counsel. The issue whether RSA ch. 169 required the city to bear the expense of Robert's care was never fully litigated. Moreover, the effect of the May 25, 1979 order was to provide the district court with the arguments of State's counsel on a concededly important issue. We perceive no abuse of discretion in the district court's decision to grant the State an opportunity to be heard on this issue.

Proceeding to the merits, we first observe that the State does not contest the district court's September 12, 1977 ruling, that the cost of Robert's initial evaluation must be borne by the State. Rather, the State contends that the costs of his subsequent care at the Philbrook facility are properly chargeable to the city under RSA 169:31-b (Supp. 1977). We agree.

Although subsequently repealed by Laws 1979, 361:1, effective August 22, 1979, RSA ch. 169 nevertheless governed proceedings regarding neglected and delinquent children during most of the period with which this case is concerned. Enacted in July 1977 and effective September 26, 1977, RSA 169:31-b provided in pertinent part:

> *Liability for Expenses.* Whenever an order creating liability for expenses is issued by the court in accordance with RSA 169:7, 169:9, 169:9-a, 169:10-a, 169:13-a, 169:14, 169:17-a or 169:18 or a child is otherwise placed pursuant to RSA 169, or whenever a child is released in accordance with RSA 621:19-a or 621:19-b, any expenses incurred shall be payable by the person chargeable by law for the child's support and necessities up to an

> amount determined by the court to be within the person's ability to pay, and such amount shall be stated in the court order. If such person shall be unable or shall refuse to pay expenses in whole or in part, *the town in which the child was resident at the time of his being the subject of a petition in accordance with RSA 169:3 or his being taken into custody shall be liable for such expenses.*
>
> . . .

(Emphasis added.) We agree with the State that the above language evinces a clear legislative intent that expenses incurred pursuant to an RSA ch. 169 committal be borne by the person "chargeable by law" or by "the town in which the child was resident . . . ." *See State in the Interest of Jane Doe,* 118 N.H. 330, 388 A.2d 574 (1978); *accord Juvenile Case #1089,* 119 N.H. 64, 398 A.2d 65 (1979).

■ The city seeks to avoid the impact of RSA 169:31-b by arguing that its provisions only apply when commitment is to a private, rather than a State-owned, facility. We find no support for such a distinction, however, in RSA ch. 169. Moreover, the section was further amended by Laws 1978, 52:19, which added the following:

> II. The office of institutional collections acting on behalf of Laconia state school and the New Hampshire Hospital is authorized to compromise or reduce *any expenses to be charged to such town.* The authority of said office to compromise or reduce said expenses shall terminate on July 1, 1979.

(Emphasis added.) Unless the legislature understood the provisions of RSA 169:31-b to include costs incurred by virtue of committal in State facilities, the language quoted from subsection II makes no sense. It is an established canon of statutory construction that doubtful language may be construed in accordance with a legislative intent evinced by a later, consistent amendment. 2A C. SANDS, SUTHERLAND STATUTORY CONSTRUCTION § 48.18 (4th ed. 1973).

■ ■ The city correctly argues that in the case of conflicting statutory provisions, the specific statute controls over the general statute. *Juvenile Case #1089,* 119 N.H. 64, 398 A.2d 65 (1979): *In*

*the Matter of Albert Gamble,* 118 N.H. 771, 394 A.2d 308 (1978). In the instant case, however, RSA ch. 169, relating as it does to proceedings involving juveniles, is the more specific statute. If it applies at all, RSA 126-A:54 relates only to persons transferred to a State facility for "observation as to sanity . . . ." RSA 126-A:54 I (Supp. 1979). Even if both statutes apply in the case before us, RSA 169:31-b is the more specific provision. The district court, therefore, erred in charging the costs of Robert's care and treatment at the Philbrook facility to the State.

As we have noted above, RSA ch. 169 was repealed by Laws 1979, 361:1. We observe, however, that the provisions of RSA 169:31-b were essentially incorporated into RSA 169-B:40 (Supp. 1979). We conclude therefrom that the legislative intent to absolve the State from financial responsibility for the treatment and care of juveniles survives the repeal of RSA ch. 169. Accordingly, we reverse the district court and remand for action not inconsistent with this opinion.

*Reversed and remanded.*

DOUGLAS, J., did not sit; the others concurred.