Merrimack
No. 80-233

### STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.

v.

### FRANCIS E. WHALAND

May 11, 1981

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*George R. Moore* on the brief and *Joseph A. Millimet* orally), for the plaintiff.

*Gregory H. Smith*, acting attorney general (*Andrew R. Grainger*, assistant attorney general, on the brief and orally), for the State.

BOIS, J.   The plaintiff appeals the decision of the Superior Court (*Cann*, J.), which approved the Master's (*John C. Fairbanks*, Esq.) recommendation and entered an order in accordance therewith. The master found that the insurance commissioner had followed the prescribed legislative standards of RSA 404-C:2 (Supp. 1979) in promulgating Insurance Department Regulation No. 14, which established the New Hampshire Reinsurance Facility. The plaintiff also challenges the findings of the court that Regulation 14 does not conflict with RSA ch. 417-A (Supp. 1979) and does not

violate the due process and equal protection clauses of the United States and New Hampshire Constitutions. We affirm the decision of the trial court.

In 1971 the legislature enacted RSA ch. 404-C ("Mandatory Risk Sharing Plans") by which it authorized the insurance commissioner to establish a plan that would ensure the availability of certain types of insurance, if he finds after a hearing that these types of insurance are not readily available in the voluntary market and that the public interest requires their availability. RSA 404-C:1 (Supp. 1979).

In RSA 404-C:2 (Supp. 1979) the legislature established guidelines for any mandatory risk sharing plans promulgated or prepared by the commissioner pursuant to RSA 404-C:1 (Supp. 1979). In 1974 the commissioner promulgated Regulation 14, which established a reinsurance facility as the mechanism by which individuals who would otherwise be denied automobile liability insurance (involuntary customers) could obtain coverage. *See generally* Lee & Formisano, *Automobile Insurance Markets: Developments in the Reinsurance Facility Technique*, 1975 INS. L. J. 9 (1975); Works, *Whatever's FAIR—Adequacy, Equity, and the Underwriting Prerogative in Property Insurance Markets*, 56 NEB. L. REV. 445, 537 n.219 (1977). To this end, the regulation requires that the insurance companies "take all comers" and further provides that the companies charge the same premium rates to both their involuntary and their voluntary customers who are within the same risk classification. The companies, however, may cede up to fifty percent of their risks to the reinsurance facility, through which the risk of loss is shared by all insurers doing business in the State.

The insurer determines the percentage of the premium paid by the insured on a ceded policy that it will retain to cover administrative costs. The remainder of the premium, which is attributable to offsetting the risk of loss, is forwarded to the reinsurance facility. If the monies ceded into this pool are insufficient to cover all claims arising under ceded policies, then the insurers make up the difference in proportion to their market share of all automobile insurance policies in the State. A similar formula is employed for reimbursement to the insurers in the event of a surplus in the pool.

██ An order of the commissioner is presumed to be prima facie lawful and reasonable and will be overturned only when a plaintiff shows by a clear preponderance of the evidence that it is unreasonable or unlawful. *Appeal of Nationwide Ins. Co.*, 120 N.H. 90, 94–95, 411 A.2d 1107, 1109–10 (1980); *Mannone v. Whaland*, 118 N.H. 86, 88, 382 A.2d 918, 919 (1978); *Insurance Serv. Office v.*

*Whaland*, 117 N.H. 712, 715, 378 A.2d 743, 745 (1977). We have recognized that the commissioner "is a specialist in the [insurance] field and upon whose expertise we must rely . . . . Due to the expertise required . . . courts should be reluctant to substitute their judgment for that of the commissioner." (Citations omitted.) *Insurance Serv. Office v. Whaland, supra* at 717, 378 A.2d at 746.

■■ We are also mindful that one of the functions of the commissioner of a State agency is "to fill in details to effectuate the purpose of the statute." *Kimball v. N.H. Bd. of Accountancy*, 118 N.H. 567, 568, 391 A.2d 888, 889 (1978); *Reno v. Hopkinton*, 115 N.H. 706, 707, 349 A.2d 585, 586 (1975). This function, however, is limited by the principle that a delegating statute promulgated by the general court must not express "its commands . . . in such broad terms as to leave . . . the agency with unguided and unrestricted discretion in the assigned field of its activity. . . ." *Smith Ins., Inc. v. Grievance Committee*, 120 N.H. 856, 861, 424 A.2d 816, 819 (1980) (quoting *Ferretti v. Jackson*, 88 N.H. 296, 302, 188 A. 474, 478 (1936)).

The plaintiff claims that Regulation 14 and the reinsurance facility which it established violate the provisions of RSA ch. 404-C (Supp. 1979). It properly quotes RSA 404-C:2 (Supp. 1979) to state that

> "Any plan promulgated or prepared as provided in RSA 404-C:1 shall:
> I. Give consideration to:
> . . . (d) The need for reasonable underwriting standards; and
> (e) The requirement of reasonable loss prevention measures;
> II. Establish procedures that will create minimum interference with the voluntary market;
> III. Spread the burden imposed by the plan equitably and efficiently within the industry. . . ."

It argues that the statute is phrased in mandatory ("shall") terms and that these statutory requirements severely limit the commissioner's administrative discretion. It alleges that the commissioner in promulgating Regulation 14 totally ignored the requirements of RSA 404-C:2 (Supp. 1979), especially those cited above.

To the contrary, the master found that RSA 404-C:2 I (Supp. 1979) requires that consideration be given to five designated areas and that there was "no evidence that the defendant [commissioner]

failed to give any consideration, or that which he did give was arbitrary, capricious or in bad faith."

■ We first consider the plaintiff's argument that Regulation 14 fails to give consideration to the need for reasonable underwriting standards. RSA 404-C:2 I(d) (Supp. 1979). Clearly, the title of RSA ch. 404-C (Supp. 1979), *"Mandatory* Risk Sharing Plans" (emphasis added), indicates that the legislature contemplated that any plans promulgated under this statute would limit the freedom of insurers. We further recognize that the requirement of Regulation 14 that an insurer accept all risks that seek coverage, that is, "take all comers," necessarily inhibits the insurer's threshold decision whether to accept or reject a risk in accordance with the traditional application of underwriting standards. We conclude, however, that the need for reasonable underwriting standards, RSA 404-C:2 I(d) (Supp. 1979), must be considered within the context of the legislature's intent of having the commissioner establish a plan that provides adequate and readily accessible coverage to all citizens otherwise unable to obtain coverage. RSA 404-C:1 (Supp. 1979).

■ Our review of Regulation 14 indicates that, although the "take all comers" provision abrogates the insurer's decision to accept or reject a high-risk consumer who seeks coverage, it does provide the insurer with the discretion to cede risks to the reinsurance facility. Furthermore, it allows the underwriter to exercise its own judgment in determining the amount of the premium of a ceded risk that it will retain for administrative costs. We therefore conclude that these discretionary elements of the plan, although not of the type that fall within the scope of traditional underwriting, indicate that the commissioner gave proper consideration to the need for reasonable underwriting standards in promulgating Regulation 14.

■ Second, the plaintiff alleges that, in promulgating Regulation 14, the insurance commissioner failed to consider not only the requirement of reasonable loss prevention measures (RSA 404-C:2 I(e) (Supp. 1979)), but also loss adjusting procedures. We agree with the trial court that loss prevention measures are "before the fact actions" such as good driver incentive programs. The plaintiff specifically asserts that "loss prevention dollars" are paid out of the monies retained by the insurer for administration of ceded claims, thereby providing no incentive for a company to adopt loss prevention measures. We again note that Regulation 14 provides that the insurer determines the percentage of the premium to

withhold for administrative purposes and, therefore, grants to the carriers the discretion to retain a certain amount of the premiums specifically for loss prevention purposes.

The plaintiff claims that the regulation "operates inequitably because under the credit system, when a company pays a loss on a policy ceded . . . , it gets full credit . . . for : . . that payment, thereby negating any incentive to adjust claims efficiently or adequately price the underwriting loss portion of any premium." The record, however, does not support this assertion, and the master so found.

■ Third, the plaintiff argues that the reinsurance facility established according to Regulation 14 contravenes the statutory requirement that any mandatory risk sharing plan prepared by the commissioner must establish procedures that will create minimum interference with the voluntary market. RSA 404-C:2 II (Supp. 1979). Specifically, the plaintiff asserts that the "take all comers" approach and the requirement that insurers underwrite policies for its involuntary and voluntary customers according to the same rate scale result in control over an insurance company's selection process for all policies written in the State. That there would be an expected interference with the voluntary market is implicit in the legislature's requirement of a plan with minimum interference with the voluntary market. Based on our reading of the record, we agree with the finding of the trial court that this expected interference is now a reality in that the involuntary market interferes with the voluntary market and that the voluntary market subsidizes the involuntary market. We conclude, however, that the "take all comers" approach, albeit one by which both the involuntary and voluntary markets are affected, does not violate RSA 404-C:2 II (Supp. 1979) because it is consistent both with the legislative expectation of interference with the voluntary market and with the legislative intent that any plan promulgated provide adequate and readily accessible coverage to all citizens otherwise unable to obtain coverage.

■■ Rates are based upon actual loss experience and classifications requested by the insurers and approved by the commissioner. *Appeal of Nationwide Ins. Co.*, 120 N.H. at 93, 411 A.2d at 1109. The mandatory insurance plan prohibits only a rate based upon cession. The plaintiff, therefore, is free to seek additional or increased rates, providing they are based on tangible factors that justify the levy of a higher premium. We hold that charging the same premium within a classification to ceded and non-ceded risks does not violate RSA 404-C:2 II (Supp. 1979) because cession of a

risk to the reinsurance facility, a determination residing solely in the insurer, is not of itself sufficient to justify the imposition of higher premiums on the involuntary market.

■ Fourth, the plaintiff claims that the reinsurance facility does not spread the burden imposed by the plan equitably and efficiently throughout the industry. RSA 404-C:2 III (Supp. 1979). The plaintiff argues that the plan's requirement that insurers share losses (or profits) based on their total market share in the State is inequitable to a high visibility, low-rate company, such as the plaintiff, because the "take all comers" provision will result in a substantial increase in their share of the overall market, including that which it does not want. We agree with the trial court that, although this may be the case, a company like the plaintiff will utilize the facility, in accord with the discretion conferred upon it by the plan, to a greater extent than a smaller, less visible insurer. In light of the legislature's intent and the commissioner's finding of a need to provide automobile insurance to the involuntary market, we conclude that sharing losses as required by the plan is equitable and efficient.

■ The plaintiff next claims that Regulation 14 materially conflicts with RSA ch. 417-A (Supp. 1979), which sets forth certain conditions under which insurance companies cannot cancel or refuse to renew policies. It specifically alleges that cancellation or non-renewal of policies is impliedly permitted because RSA ch. 417-A (Supp. 1979) does not expressly prohibit them, and concludes that Regulation 14, particularly the "take all comers" provision, conflicts with RSA ch. 417-A (Supp. 1979) because it requires underwriters to accept risks in situations in which they otherwise would have a choice. We conclude that there is no material conflict between Regulation 14 and RSA ch. 417-A (Supp. 1979) because RSA 404-C (Supp. 1979), the enabling statute under which the commissioner promulgated Regulation 14, reflects a legislative intent to limit further the freedom of underwriters, which it has earlier limited in RSA ch. 417-A (Supp. 1979).

■ Finally, relying on the case of *California Auto Assn. v. Maloney*, 341 U.S. 105 (1951), the plaintiff asserts that Regulation 14 denies it due process rights under the State and federal constitutions. U.S. CONST. amend. XIV; N.H. CONST. pt. I, art. 12. In *Maloney* the Court held that California's "assigned risk plan" did not violate the due process rights of the insurance company because the ". . . statute provides for an equitable apportionment of the assigned risks among all insurers, not that appellant serve all

comers." *Id.* at 108–09. The plaintiff in the instant case relies on the quoted language in *Maloney* to conclude that a "take all comers" approach would not pass constitutional muster. We disagree, because the New Hampshire "take all comers" provision and the attendant option to cede does not impose a mandatory acceptance of all risks.

■■ Applying our standard of review to the evidence contained in the record before us, we cannot say that the plaintiff has shown by a clear preponderance of the evidence that the commissioner's order was unlawful, unjust, or unreasonable. Furthermore, we cannot conclude that RSA ch. 404-C (Supp. 1979), the delegation statute, speaks in such broad terms as to leave the insurance commissioner "with unguided and unrestricted discretion." To the contrary, the legislative intent was manifested with sufficient clarity in the statute to properly warrant the commissioner's promulgation of Regulation 14 to establish the reinsurance facility.

*Affirmed.*

BROCK, J., did not sit; the others concurred.