Board of Registration in Medicine
No. 85-005

### APPEAL OF HENRY A. PLANTIER, M.D.
### (New Hampshire Board of Registration in Medicine)

May 23, 1985

502

*Stephen E. Merrill,* attorney general (*Douglas L. Patch,* assistant attorney general, on the brief and orally), for the State.

*McSwiney, Jones & Semple,* of Concord (*Carroll F. Jones* and *Elaine L. Clark* on the brief, and *Mr. Jones* orally), for Henry A. Plantier.

*Scotch & Zalinsky,* of Manchester (*Barry M. Scotch* on the brief and orally), for Parents for Doctor Plantier, as amicus curiae.

PER CURIAM. This appeal raises a variety of due process and procedural issues concerning the revocation of Dr. Henry A. Plantier's (the doctor) license to practice medicine in this State. We conclude that the New Hampshire Board of Registration in Medicine committed reversible error in considering a complaint over nine years old and in denying the appellant an open hearing. We therefore vacate and remand for a new hearing.

In the spring of 1984, the New Hampshire Board of Registration in Medicine (board) received two complaints against the doctor, alleging incidents of sexual misconduct. One complainant, John X., alleged that improper sexual contact took place during the course of

a physical examination in July 1975, when he was 17 years of age. The second complainant, Robert X., claimed that improper sexual contact took place during a physical examination in 1977, when he was 14 years of age, and again in February 1980, when he was 17 years of age.

After a hearing before the board, pursuant to RSA 329:17, the board concluded that Dr. Plantier had engaged in unprofessional and immoral conduct in violation of RSA 329:17, VI(d) and, on December 18, 1984, revoked his license to practice medicine. Dr. Plantier's motion for rehearing was denied, and this appeal followed.

We first address the doctor's argument that the board's consideration of John X.'s complaint alleging events taking place in excess of nine years prior to the board's hearing was a violation of due process, in that the nine-year delay prejudiced the doctor's ability to defend the accusation. The doctor argues that he is entitled to protection against stale complaints by the due process clause of the New Hampshire Constitution. N.H. CONST. pt. I, art. 15.

We begin our analysis by noting that RSA chapter 329 does not contain a limitation on the age of acts subject to disciplinary proceedings. Nor do the rules promulgated by the board pursuant to RSA 541-A:2, I (Supp. 1983) provide for such a limitation. The board, pursuant to RSA 329:2, II(b), is required by law to undertake "disciplinary proceedings and disciplinary action against licensees, as authorized by RSA 329:17 . . . ." RSA 329:17 provides, in part, that "[t]he board may undertake disciplinary proceedings . . . upon written complaint of any person which charges that a person licensed by the board has committed misconduct as set forth in paragraph VI of this section . . . ." RSA 329:17, I(b). RSA 329:17, VI(d) provides, in turn, that "[t]he board, after hearing, may take disciplinary action against any person licensed by it upon finding that the person . . . [h]as engaged in dishonest, unprofessional or immoral conduct or negligence in practicing medicine or surgery."

The doctor's due process argument is grounded upon the fact that he had approximately 100,000 patient visits between John X.'s fifteen-minute appointment in 1975 and his hearing before the board. Dr. Plantier asserts that such "delay prejudiced [his] ability to defend against the accusation in that neither [he] nor any member of his staff had any independent recollection of the complainant or his visit to the office . . . [and] the testimony in [his] defense was therefore limited to office procedure and testimony from the medical records."

■ Where there are "no statutory time limitations applicable to particular administrative proceedings . . . the question of whether or

not there is a bar by time may turn on the question of laches." 2 AM. JUR. 2d *Administrative Law* § 321 (1962). In *Tighe v. Commonwealth State Board of Nurse Examiners*, 397 A.2d 1261 (Pa. Commw. Ct. 1979), a Pennsylvania case in which a nurse lost her license for tampering with drugs, the commonwealth court stated:

> "Assuming that laches may be asserted as a defense in an administrative disciplinary action involving a professional license (and there seems to be some support for this proposition in *Pennsylvania State Board of Medical Education and Licensure v. Schireson*, 360 Pa. 129, 61 A.2d 343 (1948), laches nevertheless cannot be imputed by the mere passage of time. It must be determined from all of the circumstances of the case, one of which must be the existence of harm occasioned by the delay. The appellant has failed to show how the delay in this case prejudiced her defense to the citation or how it otherwise harmed her."

*Id.* at 1262.

■ "'Laches, unlike limitation, is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced—an inequity founded on some change in the conditions or relations of the property or the parties involved.'" *Wood v. General Elec. Co.*, 119 N.H. 285, 289, 402 A.2d 155, 157 (1979) (quoting 14 AM. JUR. 2d *Certiorari* § 30, at 807 (1964)); *Jenot v. White Mt. Acceptance Corp.*, 124 N.H. 701, 710, 474 A.2d 1382, 1387 (1984).

■ In determining whether to apply laches, "'[n]either law nor equity nor science has been able to develop any mechanical gauge that will automatically tell litigants or the court the number of months or years that are required to constitute reasonable promptness in bringing a suit to avoid the defense of laches.'" *Jenot v. White Mt. Acceptance Corp.*, *supra* at 710, 474 A.2d at 1387 (quoting *Valhouli v. Coulouras*, 101 N.H. 320, 322, 142 A.2d 711, 712–13 (1958)). "The party asserting laches bears the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay." *Jenot v. White Mt. Acceptance Corp. supra.*

Although the doctor has shown why a nine-year delay has affected his ability to defend himself, we must determine whether, in the absence of a statute of limitations, a laches-type doctrine applies to administrative actions as a requirement of procedural due process.

■ In determining whether challenged procedures satisfy the due process requirement of the State Constitution, this court employs a two-part analysis. "First, it must be determined whether

the challenged procedures concern a legally protected interest. Second, it must be determined whether the procedures afford the appropriate procedural safeguards." *Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 756, 423 A.2d 603, 605 (1980) (citations omitted).

■ In addressing the first consideration, we must determine whether the interest at stake is a protected liberty or property interest. *See Duffley v. N.H. Interschol. Ath. Assoc., Inc.*, 122 N.H. 484, 490, 446 A.2d 462, 466 (1982). In making such a determination, the touchstone of our analysis is not whether the governmental benefit conferred is characterized as a right or a privilege, but whether it is a protected property interest under part I, article 15. *See Wheeler v. State*, 115 N.H. 347, 351, 341 A.2d 777, 781 (1975), *cert. denied*, 423 U.S. 1075 (1976). We previously have recognized:

> "'The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except "for cause." Once that characteristic is found, the types of interests protected as "property" are varied and, as often as not, intangible, relating "to the whole domain of social and economic fact."'"

*Duffley v. N.H. Interschol. Ath. Assoc., Inc.*, *supra* at 491, 446 A.2d at 466 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (citations omitted)). In that regard, "[t]he loss of a privilege once granted is clearly different from the denial of a privilege that has never been given." *Stone v. Perrin*, 118 N.H. 109, 111, 382 A.2d 1112, 1113 (1978); *see Medina v. Rudman*, 545 F.2d 244, 250 (1st Cir. 1976), *cert. denied*, 434 U.S. 891 (1977).

This court has held that the renewal of a license to sell insurance may not be denied without affording due process. *Union Fidelity Life Ins. Co. v. Whaland*, 114 N.H. 832, 834, 330 A.2d 782, 783 (1974). Likewise, a physician's license to practice medicine may not be revoked absent adequate procedural safeguards. *See Schware v. Board of Bar Examiners*, 353 U.S. 232, 238–39 (1957) (State cannot exclude a person from the practice of law or from any other occupation in a manner that contravenes due process); *see also Medina v. Rudman*, *supra* at 250–51 (the right to engage in common occupations of life, once all the standards have been complied with, is subject to due process protection).

■■ Having concluded that the doctor has a legally protected property right in his license to practice medicine and thus is entitled to procedural due process before the board, we now turn to the second part of our analysis; that is, whether the challenged procedures afford the appropriate procedural safeguards. In analyzing

what procedures are due in a particular case, we consider the following factors:

> "'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'"

*Appeal of Portsmouth Trust Co.*, 120 N.H. at 757, 423 A.2d at 605 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

■ The private interest affected by the governmental action here is substantial. The right to engage in one's occupation is a privilege of fundamental significance. *See Medina v. Rudman*, 545 F.2d at 250–51. At stake in a disciplinary proceeding is a physician's license to practice his livelihood and profession. The loss of a license to practice medicine after years of training and experience is certainly a grievous loss.

■ In the absence of any limitation on the time in which a disciplinary proceeding may be brought in a case such as the one before us, the risk of an erroneous deprivation of a physician's license to practice medicine is great.

■ We previously have recognized that the primary purpose of limitations on the bringing of actions is fairness to the defendant. *See Raymond v. Eli Lilly & Co.* 117 N.H. 164, 169, 371 A.2d 170, 173 (1977). It is elemental that an individual should not "be called on to resist a claim when 'evidence has been lost, memories have faded and witnesses have disappeared.'" *Id.* at 169–70, 371 A.2d at 174 (quoting *Developments in the Law—Statute of Limitations*, 63 HARV. L. REV. 1177, 1185 (1950) (citation omitted)).

In a case such as this, the above considerations are particularly important. Here a complainant has alleged sexual misconduct. The incident underlying the complaint occurred on July 10, 1975, almost a decade prior to the hearing. It is clear that a case involving a delay of nine and one-half years is a stale one in which memories are likely to have faded or become distorted and witnesses are likely to be difficult to locate.

Moreover, this is a classic case in which the disposition turns on the credibility of the witnesses' testimony. Resolution of the matter "boils down to the question of 'who do you believe.'" *Desmarais v.*

*State Personnel Comm'n*, 117 N.H. 582, 587, 378 A.2d 1361, 1363 (1977). Because the resolution turns on the credibility of testimonial evidence, the failure to impose a limitation on the time in which such a disciplinary proceeding may be brought would significantly increase the problems of proof and would increase the danger of false, fraudulent, frivolous, speculative or uncertain claims. *See Raymond v. Eli Lilly & Co.*, 117 N.H. at 174–75, 371 A.2d at 177.

It is important to note that the situation is different in a disciplinary proceeding in which the evidence is largely *documentary*, rather than testimonial. "Certainly, doctors and hospitals meticulously maintain and store records of patient treatments." *Raymond v. Eli Lilly & Co.*, 117 N.H. at 174, 371 A.2d at 176. Because documentary evidence "is not the kind of evidence that is lost or becomes unreliable as time passes," *id.*, disciplinary actions turning on evidence that is documentary in nature are less likely to be prejudiced by the passage of time.

We conclude that the use of a laches-type doctrine, in cases in which the bringing of a complaint was significantly delayed, will lessen the risk of erroneously depriving a physician of his property interest in a license to practice his livelihood. Our analysis does not end here, however, for we must also consider the interest of the government in an action such as the one before us.

The government's interest is also significant. The primary purposes of RSA chapter 329 are to assure a high quality of medical care and to protect the public from persons unfit to practice medicine. To that end, the board is given the authority to undertake disciplinary action to protect the public interest.

Because of the importance of the government's function in disciplinary actions, we conclude that, in a case such as this, laches cannot be imputed by the mere passage of time. At the very minimum, there must be a showing that the licensee has been harmed by the delay in bringing the complaint. The burden is on the licensee to demonstrate the prejudice caused by the delay and to show that the delay affected his or her ability to defend the charges.

Furthermore, it is important to note, especially in the case of a pediatrician, who treats individuals who may not understand the proper scope of a physical examination or whether there has been any misconduct relating to the doctor's fitness to practice, that the burden is on the licensee to show that the complainant's delay in bringing a complaint was not merely a result of the lack of awareness of the nature of the conduct, but that the complainant, after becoming aware of the misconduct, "slept on his rights." *See Raymond v. Eli Lilly & Co.*, 117 N.H. at 170, 371 A.2d at 174.

■ While we do not adopt the analogous statutes of limitations as a *per se* guide to determine the time after which a disciplinary action on a complaint will deny due process, the statutes do serve as an appropriate benchmark in the case before us. Had the complainant John X. attempted to sue the doctor or seek criminal charges in this case, the actions would have been dismissed as being barred by the applicable six-year statute of limitations. *See* RSA 508:4; RSA 625:8, I.

■ "Due process under our constitutional republic has, as a primary consideration, the notion that no matter how rich or how poor, all of our citizens are entitled to fundamental fairness" when the government seeks to take action that will deprive them of their property or liberty interests. *Appeal of Public Serv. Co. of N.H.*, 122 N.H. 1062, 1072, 454 A.2d 435, 441 (1982). It is fundamentally unfair to make a physician defend a nine-year-old complaint when the complaint was not delayed by fraud or the lack of ability to discover the misconduct. To hold otherwise would be to hold that there is no constitutional outer time limit, and we will not do that. Due process is the New Hampshire Constitution's version of the principles of equity, and application of a laches-type doctrine is deemed a part of the process due a person whose economic life and professional career are on the line. It must be noted, however, that this case involves a license *revocation*. The use of "stale" incidents may lead to a different result if considered in a *new* license application context.

Dr. Plantier has demonstrated that the delay in bringing the complaint has prejudiced his ability to defend the charges. Moreover, this is not a case in which the delay was occasioned by a lack of awareness of the misconduct. Rather, John X. simply chose not to take any action until some nine years after the alleged incident and eight years after attaining age 18.

■ Although complainant John X.'s allegations should have been dismissed, the same result is not called for in the case of Robert X., who saw Dr. Plantier in 1980. Because the board considered both cases in its decision, however, we must reverse and remand for a new hearing. Our disposition of the case obviates the need for a discussion concerning the reasonableness of the board's findings and of the severity of the discipline imposed, since, on remand, the board may reach a different decision regarding both its findings and any discipline. We note that credibility in this case is of paramount importance, and, therefore, upon remand the board members who participated in these proceedings should each consider whether or not they can impartially judge this matter upon any new hearing.

Because some of the remaining issues are likely to arise in the

second hearing, we will consider the doctor's additional arguments, in the interest of judicial economy. *See State v. Shannon*, 125 N.H. 653, 661, 484 A.2d 1164, 1171 (1984). We turn first to the doctor's argument that the board erred in denying him an open hearing.

A prehearing conference was held on October 4, 1984, before Stuart Russell, M.D., chairperson of the board. At that time, the doctor first requested an open hearing. The chairperson recognized that the doctor had the right to an open hearing. On the first day of the hearing on John X.'s complaint, however, the board entertained the motion of John's counsel to meet in executive session pursuant to RSA 91-A:3, II(c) (Supp. 1983). The doctor then renewed his request for an open hearing under RSA 329:17, X. The board denied the doctor's request, reasoning that RSA 91-A:3, II(c) (Supp. 1983) permitted it to go into executive session, because the matter under consideration would affect adversely the reputation of the complainant.

On October 16, 1984, the Superior Court (*Nadeau*, J.) denied the doctor's petition for injunctive relief, ruling that RSA 329:17, X neither required an open hearing at the physician's request, nor deprived the board of its right to exercise discretion to close the hearing. Hence, the board also went into executive session to hear the testimony of the second complaining witness, Robert X.

The doctor does not dispute the fact that the Right To Know Law, RSA chapter 91-A (1977 and Supp. 1983), applies to the board. *See* RSA 91-A:1-a, III (Supp. 1983) (applicable to any functions affecting citizens by "[a]ny board or commission of any State agency or authority"); *see also Lodge v. Knowlton*, 118 N.H. 574, 575–76, 391 A.2d 893, 894 (1978). It is the doctor's position, however, that RSA 329:17, X entitles him to an open hearing and should have prevailed over RSA 91-A:3, II(c) (Supp. 1983).

It is a well settled rule of statutory construction "that in the case of conflicting statutory provisions, the specific statute controls over the general statute." *In re Robert C.*, 120 N.H. 221, 225, 412 A.2d 1037, 1040 (1980); *City of Claremont v. Truell*, 126 N.H. 30, 43, 489 A.2d 581, 590 (1985). RSA chapter 91-A is the more general of the two statutes. It was designed to assure "the greatest possible public access to the actions, discussions and records of *all public bodies* . . . ." RSA 91-A:1 (Supp. 1983) (emphasis added). The chapter applies to "'each department, agency, board and commission within the state.'" *Lodge v. Knowlton, supra* at 575, 391 A.2d at 894 (quoting Executive Order No. 74-1). RSA 91-A:3, II(c) (Supp. 1983), which embodies an exception to the general rule that "[a]ll sessions at which information, evidence or testimony in any form is received

. . . shall be open to the public," RSA 91-A:3, I (Supp. 1983), likewise applies to the proceedings of all public bodies. Under RSA 91-A:3, II(c), a board may go into executive session and exclude the public in matters which "likely would affect adversely the reputation of any person . . . ."

By contrast, RSA chapter 329 governs only physicians and surgeons in this State. RSA 329:17, X, which provides that "[h]earings held under this section shall not be open to the public unless the person whose conduct is at issue requests an open hearing," applies to one specific administrative body—the New Hampshire Board of Registration in Medicine. The provision was tailor-made for disciplinary proceedings before the board.

The legislature has specifically provided that a physician is entitled to an open disciplinary hearing, if he requests one. Had the legislature intended to qualify RSA 329:17, X by stating that it was subject to the provisions of RSA 91-A:3, II(c) (Supp. 1983), or by otherwise providing for the confidentiality of complainants' testimony, it could have so provided, if otherwise consistent with the requirements of due process. *See Claremont v. Truell*, 126 N.H. at 42, 489 A.2d at 590.

Accordingly, the above-quoted principle of statutory construction resolves the conflict between RSA 91-A:3, II(c) (Supp. 1983) and RSA 329:17, X. On remand, the doctor is entitled to an open hearing, if he chooses to request one.

The doctor next argues that because only three members of the board are physicians or surgeons, the composition of the board violates his due process rights. In essence, it is his position that the "public member" and "paramedical member," *see* RSA 329:2, do not have the training to evaluate a physician's conduct to determine whether it warrants disciplinary action.

A similar argument was rejected by this court in *Appeal of Beyer*, 122 N.H. 934, 453 A.2d 834 (1982). There we stated:

"Due process requires that the decision-maker hearing the complaint be fair and impartial. It does not require that the decision-maker be an expert in the underlying bases of the complaint. If this were true, trials before judges and juries could violate due process because judges and juries are not experts on every subject that is litigated."

*Id.* at 939, 453 A.2d at 837 (citation omitted).

Similarly, we reject the doctor's contention that due process requires adherence to the rules of evidence in disciplinary proceedings before the board. The legislature has spoken in this

regard, RSA 541-A:18, II (Supp. 1983), as have we. "The law is well settled that administrative tribunals are not bound by the strict technical rules of evidence governing court proceedings . . . even though the administrative agency is acting in an adjudicatory or quasi-judicial capacity . . . ." *N.H. Milk Dealers' Ass'n v. Milk Control Board*, 107 N.H. 335, 340, 222 A.2d 194, 199 (1966); *Auclair Transp. Inc. v. Ross Express, Inc.*, 117 N.H. 630, 634, 376 A.2d 146, 148–49 (1977); *New England Tel. & Tel. Co. v. State*, 113 N.H. 92, 101, 302 A.2d 814, 821 (1973); *Roy v. Water Supply Comm'n*, 112 N.H. 87, 92, 289 A.2d 650, 654 (1972); *see In re Mundy*, 97 N.H. 239, 85 A.2d 371 (1952). In fact, in holding that administrative bodies need not follow the rules of evidence, this court has expressly recognized that "[t]he due process requirements binding administrative procedure are quite different from those binding judicial procedure." *Roy v. Water Supply Comm'n supra; see also In re Mundy supra.* Of course, privileges apply, and irrelevant, immaterial, unreliable or incompetent evidence is to be excluded.

We turn next to the doctor's argument that RSA chapter 329 represents an overly broad delegation of authority by the legislature to an administrative body, in that the chapter gives the board too much discretion in the type of discipline to be imposed and improperly grants the board power that is judicial in nature.

The provision at issue does not express " 'its commands . . . in such broad terms as to leave the . . . agency with unguided and unrestricted discretion in the assigned field of its activity . . . .' " *Ferretti v. Jackson*, 88 N.H. 296, 302, 188 A. 474, 478 (1936); *State Farm Mut. Auto Ins. v. Whaland*, 121 N.H. 400, 404, 430 A.2d 174, 177 (1981). RSA 329:17 not only provides a gradation of permissible disciplinary measures, *see* RSA 329:17, VII, but it also includes specifics, which must be proven in order to take such disciplinary action, *see* RSA 329:17, VI. Certainly, one of the functions of the board is "to fill in details to effectuate the purpose of the statute." *Kimball v. N.H. Bd. of Accountancy*, 118 N.H. 567, 568, 391 A.2d 888, 889 (1978). The board is not accorded unbridled discretion, since disciplinary action taken by the board may be appealed to this court. RSA 329:17, VIII.

"This court has long recognized that executive officers may be vested with some judicial power to enable them to perform practically their executive duties and that some overlapping of judicial power is permissible . . . ." *Smith Insurance, Inc. v. Grievance Committee*, 120 N.H. 856, 862, 424 A.2d 816, 819 (1980). "[W]hen an executive board has regulatory functions, it may hear and determine controversies which are incidental thereto . . . ." *Opinion of the Justices*, 87 N.H. 492, 493, 179 A. 357, 359 (1935). Accordingly, the

board of registration in medicine has the authority to undertake disciplinary proceedings against its licensees in order to protect the public interest.

Finally, we address the doctor's argument that the term "immoral conduct," as used in RSA 329:17, VI(d) is unconstitutionally vague. The substance of the doctor's argument is that the phrase gives physicians no warning of the type of conduct that it proscribes.

We begin by noting that RSA 329:17, VI(d) permits the board to take disciplinary action "against any person licensed by it upon finding that the person . . . [h]as engaged in dishonest, unprofessional or immoral conduct . . . in practicing medicine or surgery . . . ." RSA chapter 329 does not define "immoral conduct."

"Due process requires that a statute proscribing conduct not be so vague as to fail to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *In re Doe*, 123 N.H. 634, 641, 465 A.2d 924, 929 (1983). Courts which have considered the meaning of the phrase "immoral conduct" have construed it to mean "conduct which is willfull, flagrant, or shameless and which shows a moral indifference to the opinion of the good and respectable members of the community." *Searcy v. State Bar of Texas*, 604 S.W.2d 256, 258 (Tex. Civ. App. 1980); *In re Monaghan*, 126 Vt. 53, 64, 222 A.2d 665, 674 (1966).

Although it is true that even after judicial definition, the phrase "immoral conduct" does not lend itself to definite boundaries by which it can be marked, we do not believe that the phrase is unconstitutionally vague. The forms which immoral conduct may take are numerous and varied, making it virtually impossible for the legislature to set forth all of the acts which come within the meaning of the phrase. "We will not hold that due process requires that [the board] anticipate every conceivable type of misconduct in which any of its [licensees] may indulge, and then fashion and announce a [code] to fit each act of misconduct." *In re Ruffalo*, 370 F.2d 447, 454 (6th Cir. 1966).

Furthermore, "[c]ourts are reluctant to strike down statutes on the ground of vagueness where the statute 'by [its] terms or as authoritatively construed [applies] without question' to those litigants before the court." *In re Doe*, 123 N.H. at 642, 465 A.2d at 929 (quoting *Parker v. Levy*, 417 U.S. 733, 755–56 (1974) (citation omitted)). A person of ordinary intelligence certainly would know that it would be "immoral" for a physician to perform fellatio on and masturbate minor male patients during the course of a physical examination.

■   Additionally, the statute at issue provides "an ascertainable standard by which it is applied to proscribe conduct." *In re Doe*, 123 N.H. at 643, 465 A.2d at 930. RSA 329:17, VI(d) specifically provides that the person against whom disciplinary action is brought must have engaged in immoral conduct "in *practicing medicine or surgery.*" (Emphasis added.) Hence, the statute can only be construed as including conduct that directly relates to a physician's practice of his or her profession and demonstrates that the physician is morally incompetent to conduct that practice. *Cf. Cole v. Combined Ins. Co. of America*, 125 N.H. 395, 480 A.2d 178 (1984).

■   We find no merit in the doctor's argument that the board may not assert jurisdiction over a physician on the ground that he engaged in immoral conduct, when the criminal justice system has chosen not to prosecute a complaint against the physician for lack of evidence. The jurisdiction of the board in this matter is clearly independent of any criminal action taken against the doctor. We find no merit in the doctor's additional arguments.

*Vacated and remanded.*