James P. MOONEY, Employee-Appellant,

v.

BENSON MANAGEMENT COMPANY, Employer-Appellee.

Superior Court of Delaware, New Castle County.

Submitted: May 10, 1982.
Decided: June 10, 1982.

Sidney Balick, of Aerenson & Balick, Wilmington, for employee-appellant.

Robert W. Ralston, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for employer-appellee.

## OPINION

TEASE, Judge.

This is an appeal from a decision of the Industrial Accident Board (Board) denying claimant's (Mooney's) petition for workmen's compensation for a heart attack.

The facts are not disputed: Mooney has been in the construction trade for over 30 years, the last 10 of which have been spent as a construction superintendent for a variety of construction companies. On November 1, 1979, he began working for Benson Management Company (Benson) in such a position; a job admittedly stressful because of the nature of his responsibilities and the people he had to deal with on a daily basis. On November 27, 1979, Mooney experienced tightness and pain in his chest while arguing with a painting sub-contractor in the normal course of his job. The pain subsided and he went to his family doctor, who referred him to a specialist in cardiology, Dr. Levy. Dr. Levy performed a variety of tests, prescribed medication, and continued to see him until January 8, 1980. Mooney continued to work for Benson until May 9, 1980, when he suffered a severe myocardial infarction which required his hospitalization. He seeks compensation for the economic loss and medical bills caused by the May 9 heart attack.

The Board made factual findings that Mooney had a pre-existing heart condition prior to May 9, 1980, and that he was not involved in any unusual exertion on that date. Compensation was denied on that basis.

Mooney makes two arguments on appeal: (1) That the Board erred as a matter of law when it applied the "Unusual Exertion" theory to the facts of his case rather than the "Cumulative Detrimental Effect" theory; and (2) that the Board's finding of a pre-existing heart condition is not supported by substantial evidence.

Mooney intertwines these two arguments by asserting that the pre-existing heart condition the Board presumes to find is really the cumulative detrimental effect of his job on his health and as a consequence he need only prove "usual exertion" on the day of his injury.

Under the well-established standard and scope of review imposed on this Court by statute and case law, we can only examine the record and determine if there is substantial evidence to support the findings and conclusions of the Board. If such evidence exists and the Board has made no error of law, its decision must be affirmed. 29 *Del.C.* § 10142; *Air Mod Corp. v. Newton,* Del.Supr., 215 A.2d 434 (1965).

■ I believe the Board applied the correct theory to the facts of this case. Mooney's only argument before the Board was that he did not have to prove unusual exertion because there was no pre-existing heart condition. He did not argue the "cumulative detrimental effect" theory before the Board, and should not be permitted to raise it for the first time on appeal. See *Wilmington Trust Company v. Conner,* Del. Supr., 415 A.2d 773, 781 (1980).

Mooney argues that even though he failed to characterize his argument below as the cumulative detrimental effect theory, under the case of *Chicago Bridge & Iron Co. v. Walker,* Del.Supr., 372 A.2d 185 (1977), that is the only applicable theory because of the absence of a pre-existing condition. While that argument might have some merit if the Board had found no pre-existing condition, it is unpersuasive in light of the fact that the Board decided the case on the very theory on which it had been presented, i.e.: unusual exertion. The Court in *Chicago Bridge* held that the Board erred in not applying the cumulative detrimental effect theory because it had made a factual finding that "... the claimant's work, admittedly heavy, gradually, over a period of time, took its toll on the claimant's health". 372 A.2d at 188. The Court said: "Clearly, that finding requires testing of plaintiff's claim under the [cumulative detrimental effect] concept noted above". *Id.* Not only has the Board not made any such finding in this case, but the cumulative theory requires a "gradual deterioration", 372 A.2d at 188, of a workman's health and causal connection between that deterioration and the injury. The record in this case fails to reveal any evidence that the stress of Mooney's job with Benson caused a gradual deterioration of his health leading to his heart attack of May 9, 1980. Instead, the medical testimony of Mooney's own witness, Dr. Levy, was that stress alone can cause a spasm of an artery, thus causing a heart attack, and the shorter the interval of time between the emotional stress and the actual attack, the greater the possibility that the attack was caused by the stress. (R. 14–20). Mooney has not argued or offered any evidence that there was a buildup of stress from his job that culminated in his heart attack of May 9. Instead, his argument and evidence is that he suffered the attack because of the stress he experienced on May 9 and not before.

Having decided that the Board applied the correct theory in this case, the only remaining issue is whether there is substantial evidence in the record to support the Board's finding that Mooney was suffering from a pre-existing heart condition when he had his heart attack on May 9.

The law on heart attacks in workmen's compensation cases in Delaware is clear. "Unusual exertion is a prerequisite to compensation in a heart or back case where a pre-existing condition is shown". *Willis v. New Castle County,* Del.Supr., 371 A.2d 1072, 1073 (1976). That rule was reaffirmed recently in *Boulevard Electric Sales v. Webb,* Del.Supr., 428 A.2d 11 (1981).

My review of the record reveals that substantial competent evidence exists to support the Board's finding of a pre-existing heart condition. Admittedly, much of the medical testimony and evidence was confusing and sometimes contradictory. However, it is the role of the Board, not this Court, to resolve conflicts in testimony and issues of credibility and to decide what weight is to be given to the evidence presented. See *Boulevard Electric, supra; Delaware Tire Center v. Fox,* Del.Super., 401 A.2d 97 (1979).

Supporting the Board's conclusion are the following evidentiary items: Dr. Levy testified that when he examined Mooney after the November 27, 1979, incident, the "... electrocardiogram ... was within normal limits, but the symptomatology was so typical for coronary artery disease that I gave him nitroglycerin and another drug called Isordil, which are used in cases of known coronary artery disease". (R 9). He defined coronary artery disease as the buildup of fatty deposits in the coronary arteries which produces a blood clot in the artery, and that this is something that in some people, takes quite a long time to occur (R 21–22). He did not know if such a buildup had happened to Mooney because there was no history of it and no tests had been done to determine it (R 22–23). He acknowledged that such a buildup over time can occur without any outward symptoms (R 22–23). It was the duty of the Board to decide which aspect of his testimony to believe, *Delaware Tire Center v. Fox, supra,* and the Board apparently believed that the coronary artery disease existed at least as of November 27, 1979.

Dr. Levy also defined a myocardial infarction as a "damaged area of heart muscle due to the lack of blood supply, that blood supply having been delivered by the artery which had been damaged by the blood clot." (R. 24). Such an infarction can build up or occur instantaneously, but if someone had mild chest pains for a month or two before the infarction, it is probable that something was building up to cause the infarction. (R 24–25). Dr. Levy's discharge summary for Mooney's hospitalization for the May 9 attack states that Mooney "had had mild pain for the last month or two . . ." (R 30). Mooney denies having any pain in his chest between the end of November, 1979, and May 9, 1980, (R 58) but it was the Board's duty to resolve this conflict and it did so by accepting the version presented by the discharge summary. Furthermore, a consultation report prepared by Dr. Colbourn regarding Mooney's stay in the hospital in May notes that Mooney was ". . . without past history of myocardial infarction, but with an anginal syndrome dating approximately six months prior to admission." (R 46).

Thus, I believe there is substantial evidence to support the Board's finding that claimant had a pre-existing heart condition prior to May 9, 1980. Under the law as stated in *Willis* and *Boulevard, supra,* the existence of a pre-existing heart condition requires the claimant to prove his heart attack was caused by some sort of unusual exertion. Mooney has admitted throughout his briefs in this appeal and at the hearing before the Board that the stress of his job on May 9 was the same as on any other routine working day. Thus, there is substantial evidence to support the Board's finding that Mooney was not involved in any unusual exertion on May 9 when he had his attack.

The Board's decision is affirmed.