Dr. Nicholas P. BASH,
Respondent–Below/Appellant.

v.

The BOARD OF MEDICAL PRACTICE,
Complainant–Below/Appellee.

Superior Court of Delaware,
New Castle County.

Submitted: Dec. 4, 1989.
Decided: Dec. 22, 1989.

Richard R. Wier, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for respondent-below appellant.

Malcolm S. Cobin, for Bd. of Medical Practice and Ann Marie Johnson, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del.

## OPINION

BARRON, Judge.

This case comes before the Court by way of an appeal from a Decision and Order (Order) of the Board of Medical Practice (the Board) dated March 23, 1989.[1] Pursuant to that Order, Dr. Nicholas P. Bash, a Wilmington psychiatrist, was temporarily suspended from the practice of medicine for a minimum period of one (1) year. The Order of the Board further provided that Dr. Bash may apply for reinstatement of his license at the end of the one (1) year period. If reinstated, however, his license will carry a permanent restriction prohibiting him from treating female patients. The factual scenario which led to the Board's action is summarized below.

### I.

In late 1987 and early 1988, the Board received three complaints from three dif-

---

**1.** Twenty-four *Del.C.*, § 1736(b) provides that an appeal from the Board "shall be heard and decided by the Superior Court in the County in which such person was practicing his profession or occupation at the time of the alleged offense."

ferent women each of whom at one time or another received psychiatric treatment from Dr. Bash. These complaints alleged that during the course of their treatment, Dr. Bash had improper sexual contact with each of the complainants. The Board is authorized to investigate complaints of unprofessional conduct.[2] An investigation into these allegations was conducted by an Investigation Committee (the Committee) appointed by the Board pursuant to 24 *Del.C.*, § 1732(b).[3] As a result of its investigation, in July, 1988 the Committee filed a complaint with the Board alleging:

1. Dr. Bash induced one of the complainants, (MWN), to have sexual intercourse with him during the course of a therapy session conducted in 1971;

2. Dr. Bash approached another complainant, (MSD), and gave her a firm kiss on the mouth at the end of a therapy session also conducted in 1971;

3. Dr. Bash inappropriately touched the breasts of the third complainant, (GC), at

the end of a therapy session conducted in 1987.[4]

Following its investigation, the Committee requested that the Board hold a hearing to determine whether Dr. Bash's license to practice medicine should be suspended or revoked[5] for conduct falling within the parameters of 24 *Del.C.*, § 1731(b)(3) and (11) and Section 15 of the Delaware Board of Medical Practice Rules and Regulations.[6] The complaint specifically concluded that Dr. Bash was guilty of "dishonorable or unethical conduct involving the exploitation of the doctor/patient relationship for sexual gratification" and "gross misconduct, negligence and/or incompetence in the practice of psychiatry by virtue of his failure to properly treat" the three complainants.

II.

Pursuant to 24 *Del.C.*, § 1734,[7] a three member Hearing Panel (the Panel) was des-

---

2. Twenty-four *Del.C.*, § 1730(a) states, in part, as follows:
"(a) The Board shall have the following powers and duties in addition to the other powers and duties set forth in this chapter:

\* \* \* \* \* \*

(3) To investigate complaints and charges of unprofessional conduct respecting any holder of a certificate to practice medicine; ..."

3. Twenty-four *Del.C.*, § 1732(b) states:
"(b) The Board may appoint an unbiased committee to investigate charges of unprofessional conduct and medical malpractice. Investigation by this committee shall stay within the bounds of the charge being investigated, unless the investigation itself provides good cause for additional investigation. The committee shall report to the Board its activities and findings. The Board may direct the committee to prepare a complaint against the person accused."

4. In light of the sensitive nature of the underlying charges, the Court will refer to the complainants by their initials.

5. The Board is authorized to suspend or revoke a person's certificate to practice medicine. Twenty-four *Del.C.*, § 1731(a) states:
"(a) Any person to whom a certificate to practice medicine and surgery in this State has been issued may be disciplined by the Board, by means of fine, restriction, revocation, or suspension, either permanently or temporarily, of his certificate of authorization or other action

579 A.2d—26

deemed appropriate by the Board, for unprofessional conduct as defined in subsection (b) of this section."

6. Twenty-four *Del.C.* § 1731(b)(3) and (11) state:
"(b) Unprofessional conduct is hereby defined as any of the following acts:

\* \* \* \* \* \*

(3) Any dishonorable or unethical conduct likely to deceive, defraud or harm the public;

\* \* \* \* \* \*

(11) Gross misconduct, negligence or incompetence in the practice of medicine...."
Section 15 of the Delaware Board of Medical Practice Rules and Regulations states, in pertinent part, that:
"The phrase 'dishonorable or unethical conduct likely to deceive, defraud, or harm the public' as used in 24 *Del.C.*, § 1731(b)(3) shall include, but not be limited to, the following specific acts:

\* \* \* \* \* \*

b. Exploitation of the doctor/patient privilege for personal gain or sexual gratification. ..."

7. Twenty-four *Del.C.*, § 1734(a) states, in pertinent part, as follows:
"(a) Procedure—After the Board accepts a formal complaint which has been prepared by the Board-appointed investigative committee, the Board shall appoint a hearing panel composed of 3 members of the Board, who shall hear all evidence concerning charges of unpro-

ignated by the Board to conduct hearings with respect to the allegations contained in the complaint. Hearings before the Panel were held on October 24 and November 21, 1988, during which the Panel received documentary evidence and heard sworn testimony from witnesses including the complainants, Dr. Bash and Drs. Broudy and DeCherney, both practicing psychiatrists. On January 18, 1989, the Panel issued its opinion with respect to the issues set forth in the complaint of the Committee including findings of fact and conclusions of law as required by 24 *Del.C.*, § 1734(a).

In its opinion, the Panel concluded that the evidence presented at the hearing supported a finding that Dr. Bash had, in fact, committed the acts alleged in the complaint filed by the Committee. As to MWN, the Panel found that a relationship between Dr. Bash and MWN did in fact develop and progress over time which ultimately led to sexual intercourse between the two during the 1971 therapy session.[8] The Panel further found that Dr. Bash's act of having sexual intercourse with MWN was unethical conduct and that the continued treatment of MWN by Dr. Bash, once intercourse occurred, was unethical and harmful to MWN.[9] As to MSD, the Panel found that Dr. Bash did kiss her on the mouth in an inappropriate manner. The Panel further found that Dr. Bash's explanation that

her accusations were the result of a sexual fantasy resulting from a toxic amount of Ritalin in her system was not credible. As to GC, the Panel found that Dr. Bash did grab GC's breasts as alleged. The Panel found as not credible Dr. Bash's explanation that he did not grab GC's breasts but rather was attempting to push her away as she approached to embrace him.

Based upon its findings of fact, the Panel concluded that Dr. Bash was guilty of unethical conduct likely to deceive, defraud and harm the public in violation of 24 *Del.C.*, § 1731(b)(3) as a result of his sexual relationship with MWN. The Panel further concluded that the relationship also constituted an exploitation of the doctor/patient privilege for sexual gratification in violation of Section 15 of the Board's Rules and Regulations and that Dr. Bash's failure to refer MWN after the sexual encounter constituted unethical conduct likely to harm the public, also in violation of 24 *Del.C.*, § 1731(b)(3). As to MSD and GC, the Panel concluded that Dr. Bash's conduct toward those complainants constituted unethical conduct likely to harm the public, in violation of 24 *Del.C.*, § 1731(b)(3).[10] As a result of its findings of fact and conclusions of law, the Panel recommended that the Board revoke Dr. Bash's license to practice medicine in Delaware.[11]

---

fessional conduct ... alleged in the complaint. Such evidence shall be taken upon sworn testimony. The rules of evidence of the Superior Court of this State shall be followed as far as practicable. After all evidence has been heard by the hearing panel, it shall make a written statement of its findings of fact and conclusions of law. The findings of fact made by the hearing panel shall be binding on the parties appearing before it and shall also be adopted by and binding upon the Board. ..."

8. Dr. Bash did not dispute that intercourse occurred in the proceedings before the Panel. He did however deny that it occurred in a letter to the New Castle County Medical Society dated February 13, 1988. Contrary to Dr. Bash's present contention that he denied only that he initiated the sex, Dr. Bash states in his letter: "Her allegations are so contrived that I hardly know who she is talking about. *I deny all of her allegations.*" The record reveals that between February 13, 1988 and the date of the hearings before the Panel, Dr. Bash was confronted with a taped telephone conversation between MWN

and him wherein he admitted to the sexual encounter.

9. The Panel made this finding despite testimony from Dr. DeCherney that the American Psychiatric Association had not published guidelines regarding referral of patients by a therapist after having a sexual encounter until 1973. The Board further found that Dr. DeCherney's testimony established that Dr. Bash's continued treatment of MWN between 1973 and 1975 was in violation of the published standards.

10. The Panel concluded, however, that the charge of gross misconduct, negligence, or incompetence in the practice of medicine as set forth in 24 *Del.C.*, § 1731(b)(11) and contained in the complaint was not supported by the evidence.

11. The Panel has no independent power to take disciplinary action against the offending license holder. Twenty-four *Del.C.*, § 1734(a) states, in pertinent part, as follows:

### III.

On March 14, 1989, a formal hearing was held before the full Board excluding the members comprising the Committee and the Panel, at which time the Board made its own conclusions of law and a determination of the disciplinary action to be taken against Dr. Bash. As required under 24 *Del.C.*, § 1734, the findings of fact contained in the opinion of the Panel were adopted by the Board and incorporated into its Order issued under date of March 23, 1989. In addition, the Board specifically adopted and incorporated into its Order those conclusions of law found by the Panel which held that Dr. Bash's conduct with respect to each of the three complainants was in violation of 24 *Del.C.*, § 1731(b)(3) and Section 15 of the Board's Rules and Regulations. The Board also concluded, contrary to the findings of the Panel, that Dr. Bash's conduct with respect to each of the three complainants also constituted gross misconduct in the practice of medicine in violation of 24 *Del.C.*, § 1731(b)(11). On this basis, the Board held that Dr. Bash could not continue to safely practice medicine and imposed the license suspension set forth in its Order. On May 8, 1989, Dr. Bash filed this appeal from the Board's Order.

In support of his appeal, Dr. Bash sets forth numerous contentions, the proper resolution of any of which would, in his view, justify this Court's reversal of the Order of the Board. Because these issues involve important substantive and procedural questions of law relating to this case and future proceedings before the Board, the Court will, within the permissible scope of review, address each of these issues in the order in which they have been presented by Dr. Bash.

### IV.

In pertinent part, 24 *Del.C.*, § 1736(a) provides that an appeal from an Order of the Board shall be made in the same manner as provided by the Superior Court Civil Rules for appeals from commissions, boards and agencies. The appeal shall be on the record without a trial de novo. 29 *Del.C.*, § 10142(c). Under the well-established standard and scope of review imposed on this Court by statute and case law, the Court's duty is to examine the record and determine if there is substantial evidence to support the findings and conclusions of the Board. If such evidence exists and the Board has made no error of law, its decision must be affirmed. *Mooney v. Benson Management Co.*, Del.Super., 451 A.2d 839 (1982), citing 29 *Del.C.*, § 10142; *Air Mod Corp. v. Newton*, Del. Supr., 215 A.2d 434 (1965). Substantial evidence is more than a scintilla and less than a preponderance. *Olney v. Cooch*, Del.Supr., 425 A.2d 610 (1981).

#### A. *Sufficiency of the Record*

The first issue upon which this appeal is based centers upon the legal sufficiency of the factual record as set forth in the Board's Order. Dr. Bash asserts that the Board's decision "is premised upon no clear statement of facts and prevents Dr. Bash and this Court from knowing what facts the Board relied upon in punishing him." In the Court's view, the recitation of facts contained in the Panel's opinion under the heading "finding of fact" is clearly sufficient to support the Board's decision. The critical factual questions in this case were whether Dr. Bash had inappropriate sexual contact with the complainants as alleged in the complaint and whether it was unethical

"(a) ... If the hearing panel finds that any or all of the factual allegations made in the complaint are supported by the evidence it has considered, the Board, excluding members of the hearing panel and any investigative committee members, will consider the statement of the findings of fact and conclusion of law made by the hearing panel at a formal hearing. Such formal hearing is to be held within 60 days after the issuance of the written statement of the hearing panel. At such formal hearing the Board shall meet to make its own conclusions of law and to determine what disciplinary action, if any, is appropriate based upon the findings of fact made by the hearing panel. A majority vote of no less than 6 board members who consider the matter shall be necessary in order for any disciplinary action to be taken. Upon the reaching of conclusions of law and determination of the appropriate disciplinary action, the Board shall issue a written opinion."

to continue to treat MWN after she and Dr. Bash engaged in sexual intercourse. The act of sexual intercourse with MWN was admitted by Dr. Bash at the Panel hearing. With regard to MSD and GC, the Panel, after hearing evidence on two separate occasions found that Dr. Bash "did kiss MSD on the mouth in an inappropriate manner" and "did in fact grab GC's breasts as alleged, . . ."

■ As required under 24 *Del.C.,* § 1734, the Board adopted the findings of fact contained in the Panel's opinion and incorporated those findings into its Order. A copy of the Panel's opinion, which included the findings of fact, was attached to the Board's Order. It is abundantly clear to the Court that the findings of fact relied upon by the Board in its Order were those set forth in the opinion of the Panel. It is equally clear that those facts were supported by substantial evidence and were sufficient to support the Board's Order and the disciplinary action taken against Dr. Bash.

### B. *Violation of 24 Del.C., § 1734(f)*

Dr. Bash next asserts that the Board violated 24 *Del.C.,* § 1734(f) in that it did not meet, deliberate upon or vote on the conclusions of law prior to the determination of the sanctions to be applied against him.[12] The Court is satisfied on the record before it that the Board did in fact meet, deliberate and vote upon its conclusions of law prior to imposing sanctions. The written Order of the Board is sufficient in this case to establish that the Board properly complied with the procedural requirements set out in § 1734(f).

### C. *Violation of 24 Del.C., § 1735(c)*

■ Dr. Bash next asserts that the Board violated 24 *Del.C.,* § 1735(c)[13] because an insufficient number of votes were cast to impose the license suspension. The basis of Dr. Bash's theory in this regard centers upon the conflict between 24 *Del.C.,* § 1734(a) and (f) and 24 *Del.C.,* § 1735(c). Subsections (a) and (f) of Section 1734 require the affirmative vote of no less than a majority of six members of the Board who consider the matter before the Board may take disciplinary action against the licensee. Twenty-four *Del.C.,* § 1735(c), however, requires the affirmative vote of eight members of the Board for the taking of disciplinary action. How is this discrepancy to be explained? A perusal of the legislative history of these sections is illustrative. In 1977, the General Assembly amended § 1735(c) by lowering the number of votes required in order for the Board to take disciplinary action from nine to eight. 61 *Del.Laws,* c. 68, § 6. At that same time, § 1734 was also amended by lowering the number of votes required for the Board to impose discipline from nine to eight. 61 *Del.Laws,* c. 68, § 7. In 1984, the General Assembly rewrote 24 *Del.C.,* § 1734 in its entirety. The required number of votes necessary for the Board to impose discipline was again lowered, this time from eight to six. 64 *Del.Laws,* c. 327, § 4. No change, however, was made to the eight vote requirement for disciplinary action contained in § 1735(c), and, as a result, there exists an irreconcilable conflict between two independent sections of the Medical Practices Act.

**12.** Twenty-four *Del.C.,* § 1734(f) provides, in pertinent part, as follows:

"(f) *Conduct of hearing before the Board.* The findings of fact made by the hearing panel shall be binding upon and adopted by the Board at any formal hearing it shall conduct. The Board shall take no additional evidence regarding charges made in the complaint. The Board shall then deliberate and reach conclusions of law based upon the findings of fact made by the hearing panel and also determine what disciplinary action, if any, is appropriate based upon the facts found by the hearing panel and the Board's conclusions of law. It shall be necessary for a majority of the Board members con-

sidering the case before it to vote in favor of any conclusions of law made by the Board. It shall also be necessary for a majority of no less than 6 Board members considering the case to vote in favor of any disciplinary action taken by the Board. . . ."

**13.** Twenty-four *Del.C.,* § 1735(c) states, in pertinent part, that:

"(c) If less than 8 members of the Board vote for the taking of any disciplinary action, the Board shall forthwith order a dismissal of the complaint and the exoneration of the certificate holder. . . ."

The rules of statutory construction mandate that the later enacted statute, in this case the 1984 version of § 1734 which mandates a majority of six members of the Board to vote for any disciplinary action, controls the earlier conflicting statute. See *Blue Cross & Blue Shield of Delaware v. Elliott*, Del.Super., 449 A.2d 267, 270 (1982). In the case of *Green v. County Council of Sussex County*, Del.Ch., 415 A.2d 481 (1980), Vice Chancellor Hartnett espoused this tenet of statutory construction:

> It is assumed that when the General Assembly enacts a later statute in an area covered by a prior statute, it has in mind the prior statute and therefore statutes on the same subject must be construed together so that effect is given to every provision unless there is an irreconcilable conflict between the statutes, in which case the later supersedes the earlier. SANDS: *Sutherland Statutory Construction*, 4th Ed. § 5102, citing *Raynor v. City of Arcota*, Cal.Supr., 11 Cal.2d 113, 77 P.2d 1054 (1938); *Borough of Millersville v. Township of Lancaster*, Pa.CW Ct., 2 Pa.Cmwlth. 587, 279 A.2d 349 (1971).

*Id.* at 484.

In light of the foregoing, the Court concludes that the number of votes required in order for the Board to take disciplinary action in this case was a majority of six members. Because the record reveals that at least seven votes were cast in favor of the discipline imposed, the Court finds that Dr. Bash's contention that there was an insufficient number of votes under the statute to carry the disciplinary action taken is without merit.[14]

### D. *Hearsay Evidence*

■ Dr. Bash argues that his due process rights and 24 *Del.C.*, § 1734(f)[15] were violated as a result of his contention that the Board was improperly given additional and hearsay evidence in the form of a February 7, 1989 letter from Ms. Johnson requesting a temporary suspension of Dr. Bash's license to practice medicine and certain other communications. While the letter from Ms. Johnson and the other communications did contain information that was not in the findings of fact made by the Panel, the Court does not believe that receipt and consideration of this information is sufficient to establish a violation of 24 *Del.C.*, § 1734(f) or of Dr. Bash's due process rights. The record reveals that the findings of fact which formed the basis of the Board's Order and the disciplinary action imposed were those of the Panel. Nothing in the record before the Court indicates that the Board took any of the information contained in the February 7, 1989 letter or other communications, which were not in the Panel's findings of fact, into consideration in its deliberations and ultimately its decision on sanctions. While it may have been less than appropriate for Ms. Johnson to send this letter at the time she sent it, this fact alone does not justify reversal of the Board's Order, especially where Dr. Bash cannot specifically identify how he was prejudiced by receipt of that information by the Board. The Court believes that no prejudice actually resulted. In fact, the Court notes that the Board's sanctions were less severe than the sanctions recommended by the Panel.

■ Dr. Bash further asserts that the Panel erred as a matter of law because it admitted and relied upon hearsay testimony when it permitted Dr. Vates to testify about what Ms. Suiter told him about what MSD told her about the incident with Dr. Bash. "Reversal is warranted if the administrative agency exercised its power arbitrarily or committed error of law, or made findings of fact unsupportable by substantial evidence." *Kreshtool v. Delmarva Power and Light Co.*, Del.Super., 310 A.2d 649 (1973). Because there is substantial evidence on the record to support the Panel's findings of fact as adopted by

---

**14.** The President of the Board may have been in error when he stated that the vote in favor of the discipline imposed was "seven in favor, none opposed." The minutes of the March 14, 1989 meeting of the Board reveal that eight votes were cast in favor of the Board's action.

**15.** See footnote 12, *supra*.

the Board, specifically including its findings of fact with respect to the incident involving MSD, it is unnecessary for the Court to discuss this hearsay issue. However, assuming that the testimony of Dr. Vates was inadmissible hearsay and that its admission was error, it was of minor importance given the other evidence presented. The Court believes that the error here asserted was not so substantial as to justify reversal. *McNally v. Eckman,* Del.Supr., 466 A.2d 363 (1983).

### E. *Factual and Legal Sufficiency of the Panel's Opinion*

■ Dr. Bash next asserts generally that "the Panel's decision is not the product of an orderly and logical deductive process, is not supported by substantial evidence of record and is not free of legal error." In support of his attack on the Panel's deductive process, Dr. Bash's arguments can best be summed up as an attempt to reargue the facts of this case by way of this appeal. The Administrative Procedures Act, 29 *Del.C.,* § 10142, provides:

 The Court, when factual determinations are at issue shall take due account of the experience and specialized competency of the agency and the purposes of the basic law under which the agency has acted. The Court's review in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency.

It is the role of the Panel, and not the Court, to resolve confusing evidence and conflicts in testimony, to determine credibility and to assign weight to the evidence. *Mooney, supra.* As stated earlier, the Court finds that the Panel's opinion and the Board's Order are amply supported by substantial evidence.

Dr. Bash further asserts that the Panel and Board erred when both concluded that the continued treatment of MWN was a violation of 24 *Del.C.,* § 1731(b)(3). In support of this contention, Dr. Bash cites the testimony of Dr. DeCherney which he be-

lieves to be more credible than that of Dr. Broudy. The Panel, as is its prerogative, chose to assign greater weight to the testimony of Dr. Broudy. When asked by counsel for Dr. Bash about the propriety of continuing to treat a psychiatric patient after a sexual encounter between the treating psychiatrist and the patient, Dr. Broudy responded:

 "I would say that's an incompetent psychiatrist who's not performing the ethics of psychiatric standards of practice. It is not possible for a psychiatrist to work through violating a patient in that way. Because this patient, these kind of patients are very vulnerable to that kind of thing and that's how they sometimes get in those situations."

As stated, the Panel accepted, as was its prerogative, Dr. Broudy's testimony over Dr. DeCherney's as the more credible. Also, and perhaps more importantly, it was not essential to the Board's Order and the disciplinary action taken by the Board that the continued treatment of MWN be found to be a violation of 24 *Del.C.,* § 1731(b)(3). Dr. Bash's violation of § 1731(b)(3) as well as the disciplinary action taken by the Board is amply supported by the finding that he engaged in sexual intercourse with MWN and the improper contact with MSD and GC.

### F. *Laches and Ex Post Facto*

■ Dr. Bash next asserts that the Board erred by not applying the Doctrine of Laches or the *Ex Post Facto* Clause in this case. It has been held that there are no statutes of limitation applicable to disciplinary proceedings and therefore generally no basis for laches. 61 Am.Jur.2d., *Physicians, Surgeons, and Other Healers,* § 104 (1981). Where it has been successfully asserted as a defense in administrative disciplinary actions involving professional licenses, laches cannot be imputed by the mere passage of time. It must be determined from all of the circumstances of the case, one of which must be the existence of harm occassioned by the delay. *Appeal of Plantier,* 126 N.H. 500, 494 A.2d 270 (1985), citing *Tighe v. Commonwealth State Board of Nurse Examiners,* 40 Pa.

Cmwlth. 367, 397 A.2d 1261 (1979). The party asserting laches bears the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay. *Appeal of Plantier, supra.* Applying this standard to the facts of this case, Dr. Bash has failed to meet his burden. Dr. Bash has not specifically identified any witnesses who have become unavailable or evidence which has been lost due to the passage of time. Instead, the substance of his laches argument seems to be that the passage of time somehow makes his version of the facts more credible and the Panel's refusal to believe his version amounts to prejudice. On this record, the Court finds that Dr. Bash has not established a defense in this case under the doctrine of laches.[16]

■ Next Dr. Bash asserts that the application of § 1731(b)(11) and Section 15 of the Board's rules and regulations, enacted in 1976, to the incidents involving MWN and MSD which occurred in 1971 are barred by the *ex post facto* clause of the United States Constitution. Stated differently, Dr. Bash argues that at the time he had sexual intercourse with MWN and kissed MSD, such conduct was not unethical and therefore the Board cannot now discipline him for those acts. An *ex post facto* or retroactive law, is one which takes away rights acquired under existing laws, creates a new obligation or imposes a new duty with respect to past events. *State, ex rel. James Atty. Gen. v. Mills, et al.*, Del. Supr., 57 A.2d 99 (1947).

In 1970, dishonorable, unethical or unprofessional conduct likely to deceive, defraud or harm the public was, as it is today, grounds to suspend or revoke a licensee's privilege to practice medicine. 52 *Del. Laws*, Ch. 323, § 5. It cannot be seriously doubted that sexual exploitation of a patient by a physician constitutes dishonorable, unethical or immoral conduct. Moreover, in the case of *Meffert v. State Board of Medical Registration and Examination*, 66 Kan. 710, 72 P. 247 (1903), aff'd, 195 U.S. 625, 25 S.Ct. 790, 49 L.Ed. 350 (1904), the Court considered the power of

the Kansas State Board of Medical Examiners to revoke an existing license to practice medicine for immoral acts committed before the enactment of the statute creating the Board. One of the issues raised by the licensee was that because the acts resulting in the license revocation were committed before the passage of the law creating the Board, application of the law to those acts would be a violation of the *ex post facto* clause of the United States Constitution. In response, the Court stated:

> By an "ex post facto law" is meant one which imposes a punishment for an act that was not punishable at the time it was committed, or imposes an additional punishment to that then prescribed, etc. The revocation of a license to practice medicine for any of the reasons mentioned in the statute was not intended to be, nor does it operate as, a punishment, but as a protection to the citizens of the State.... It has never been thought that the withholding or revocation of such license was in any sense a punishment.... [T]he only purpose of the law was to require a certain standard of morals of the physician....

*Id.* 72 P. at 251.

Based upon the reasoning in *Meffert, supra,* and Delaware law as it existed at the time of the improper acts, Dr. Bash's *ex post facto* challenge to the application of 24 *Del.C.*, § 1731(b)(11) and Section 15 of the Board's Rules and Regulations to the incidents involving MWN and MSD is deemed to be without merit.

### G. *24 Del.C., § 1731(b)(11)*

Finally, Dr. Bash argues that the Board erred when it concluded, contrary to the holding of the Panel, that Dr. Bash's conduct did establish gross misconduct, negligence or incompetence in the practice of medicine. The Board concluded as a matter of law that Dr. Bash's actions with respect to the three complainants were sufficient to support a violation of 24 *Del.C.*, § 1731(b)(11). This conclusion is supported

---

**16.** Nothing in this opinion should be construed as holding that the doctrine of laches applies to

cases involving disciplinary action by the Board of Medical Practice.

by substantial evidence and is free from legal error.

## V.

Because of the Court's decision in this case it is unnecessary to consider the Board's motion to strike portions of Dr. Bash's brief.

For the foregoing reasons, the Order of the Board of Medical Practice is hereby Affirmed.