# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD BROUSELL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N20A-01-002 DCS |
| | ) | |
| DELAWARE BOARD OF MENTAL | ) | |
| HEALTH AND CHEMICAL | ) | |
| DEPENDENCY PROFESSIONALS, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: December 21, 2020
Decided: April 14, 2021

*On Appeal from the Delaware Board of Mental Health
and Chemical Dependency Professionals*

**AFFIRMED**

**OPINION**

Michael J. Logullo, Esquire, Attorney for Appellant Richard Brousell

Zoe Plerhoples, Esquire, Deputy Attorney General, Attorney for Appellee
Delaware Board of Mental Health and Chemical Dependency Professionals

**STREETT, J.**

Richard Brousell ("Appellant") appeals the Delaware Board of Mental Health and Chemical Dependency Professionals Board's (the "Board") December 18, 2019 decision to revoke Appellant's license although a Hearing Officer had recommended suspension. Upon consideration of the facts, arguments, and legal authority set forth by the parties; statutory and decisional law; and the entire record in this case, the Court hereby finds as follows and affirms the Board's decision:

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Appellant has been a Board-licensed professional mental health counselor since 1996. Beginning in 2010, the Board has disciplined Appellant for three separate violations, including violation of the terms of a probationary discipline.[1]

This appeal involves revocation of Appellant's license based on two complaints that are unrelated to his previous Board disciplines. One complaint concerned Appellant's conduct on December 18, 2000 and the other concerned his conduct in March 2017.[2]

The December 2000 incident involved Appellant's treatment of his patient, A.P., a 30-year-old woman. According to Appellant's notes, A.P. had emotional

---

[1] Board Order, at 1 (Dec. 20, 2019). The three other disciplinary matters are Case Nos. 33-02-09 (June 2010), 33-09-10 (Aug. 2011), and 33-02-11 (Aug. 2011).

[2] *Id.* at 2.

issues that included feelings of helplessness, negativistic thinking, and abandonment issues.[3]

On December 18, 2000, when A.P. missed one of her appointments, Appellant called A.P. late at night. He told her that her body was beautiful[4] and that he was thinking about her body while watching a pornographic film. He told her that he wanted to "eat" her body.[5] A.P. made contemporaneous notes of this call.

Two days after the incident, A.P. reported Appellant's conduct to the police.[6] In January 2001, Appellant was arrested and, in March 2001, entered a plea of no contest to criminal harassment.[7] He was placed on probation before judgment.[8]

The March 2017 incident involved a different patient, D.S., age 70, who had a complicated medical history.[9] D.S. had a caretaker, D.P (a woman in her thirties), who would drive D.S. to her appointments with Appellant.[10]

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

At her first session with Appellant, D.S. signed a form directing that her confidential information could only be released to her husband and two of her physicians.[11] D.P. was not included on the form and D.S. did not give consent for release of confidential information to D.P.[12] Nevertheless, Appellant sent D.P. a text message that contained confidential information about the treatment and diagnosis of D.S.[13]

Additionally, Appellant's ensuing text message exchange with D.P. included personal comments to D.P. Appellant texted D.P. that she (D.P.) needs to "let go and be a woman", she needs "companionship", and he (Appellant) knows "what alone is like."[14] Appellant also wrote that D.P. should come to his office to talk "privately". The text message exchange made D.P. uncomfortable and was inappropriate.[15]

D.S. subsequently saw the text message exchange, discussed it with her psychiatrist, and her psychiatrist instructed her to report Appellant's conduct to the

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

Board.[16]  D.S. contacted the Division of Professional Regulation (the "Division")

and spoke with Division investigator, Kathleen Riddell (the "Investigator").[17]

During the 2017 investigation into the D.S. matter, the Division learned of

A.P.'s. 2001 complaint.[18]  The State prosecutor and the Division Investigator then

contacted A.P. and found that they had been unaware of Appellant's no contest plea

in 2001 concerning his misconduct with A.P.[19]

Ms. Riddell referred these two cases to the Department of Justice.[20]  In April

2018, the State filed a formal Complaint with the Board against Appellant alleging

---

[16] Recommendation of Chief Hearing Officer, at 19–20 (Sept. 26, 2019) ("Recommendation").

[17] *Id.* at 20.

[18] *Id.* at 4.

[19] Division investigators who worked on Appellant's matters (both previous and current) did not know how they missed A.P.'s criminal charge and Appellant's no contest plea. The Hearing Officer noted that there may be a possible issue regarding the completeness of information in DelJIS (Delaware Criminal Justice Information System). *Id.* at 15.

[20] *Id.*

multiple violations of Directives in the Board's Ethics Code.[21]  Pursuant to Board

regulations, Directives violations are a violation of 24 *Del. C.* § 3009(a)(5).[22]

On July 22 and 23, 2019, the Hearing Officer conducted a hearing.[23]  A.P.,

D.S., Appellant, and Ms. Riddell testified at the hearing.  The text message exchange

was entered into evidence.

---

[21] Those Directives state, in pertinent part:

Directive 1: [Counselors] . . . shall not share information that is obtained through the counseling process without specific written consent by the client or legal guardian except to prevent clear, imminent danger to the client or others or when require to do so by a court order.

Directive 8: Certified counselors are aware of the intimacy in the counseling relationship and maintain respect for the client.  Counselors must not engage in activities that seek to meet their personal or professional needs at the expense of the client.
Directive 11: Certified counselors do not condone or engage in sexual harassment, which is defined as unwelcome comments, gestures, or physical contact of a sexual nature.

Directive 13: Certified counselors are accountable at all times for their behavior.  They must be aware that all actions and behaviors of the counselor reflect on professional integrity and, when inappropriate, can damage the public trust in the counseling profession.  To protect confidence in the counseling profession, certified counselors avoid behavior that is clearly in violation of accepted moral and legal standards.

Directive 61: [Counselors] shall not misuse their professional influence or meet their own needs at the expense of clients or their welfare.

[22] 24 *Del. C.* § 3009(a)(5) states, in pertinent part:
A person licensed under this chapter is subject to the disciplinary sanctions set forth in § 3011 of this title if, after a hearing, the Board finds that the licensee has: . . . Violated a provision of this chapter or a regulation promulgated by the Board under this chapter.

[23] Board Order, at 1.

On September 26, 2019, the Hearing Officer issued an 83-page recommendation.[24] The Hearing Officer determined that Appellant violated Ethics Code Directives 1, 8, 11, 13 and 61 and thereby violated 24 *Del. C.* § 3009(a)(5).[25]

Specifically, the Hearing Officer found, in relation to A.P., that Appellant had engaged in activities that met his own personal or professional needs at the expense of his client by sexually harassing her when he made the inappropriate phone call[26] and that Appellant's phone call was behavior that clearly violated accepted moral and legal standards.[27]

In relation to D.S., the Hearing Officer found that Appellant had shared confidential information obtained through the counseling process without the patient's consent.[28] The Hearing Officer also determined that Appellant's discomforting text message exchange with the caretaker was a "misuse [of] his professional influence."[29]

---

[24] Recommendation, at 83 (Sept. 26, 2019).

[25] *Id.* at 75–81.

[26] *Id.*

[27] *Id.*

[28] Board Order, at 3.

[29] *Id.*

The Hearing Officer recommended license suspension and that Appellant could petition for reinstatement after one year conditioned upon successful completion of continuing education credits in ethics, boundary issues, and standards of care.[30] Upon reinstatement, Appellant would then be placed on probation for two years under the supervision of another licensed counselor.[31] Appellant would also have to pay a $2,500 fine.[32]

On October 15, 2019, Appellant filed written exceptions to the Hearing Officer's Recommendation.[33] The State filed its responsive exceptions on October 16, 2019.[34]

On October 23, 2019, the Board deliberated on the Recommendation and the parties' exceptions.[35] Appellant and the State attended the meeting and made brief oral arguments.

After deliberation, the Board agreed with the Hearing Officer's recommended conclusions but amended the recommended discipline.[36] The Board determined that

---

[30] Recommendation, at 83

[31] *Id.*

[32] *Id.*

[33] Board Order, at 4.

[34] *Id.*

[35] *Id.* at 5.

[36] *Id.*

the Hearing Officer's recommended discipline was too lenient based on Appellant's "long-standing, seemingly intractable pattern of unethical behavior".[37]

The Board *unanimously* voted to revoke Appellant's license.[38] The Board found that Appellant had not learned to correct his behavior and that his previous disciplines of probation and suspension did not deter his unprofessional conduct which began as early as 2000 and occurred again in 2017.[39] Ultimately, the Board determined that license revocation was the best way to protect the citizens of Delaware.[40]

On January 6, 2020, Appellant filed the present appeal.[41]

On September 4, 2020, Appellant filed his Opening Brief.

On September 25, 2020, the Board filed its Answering Brief.

On October 9, 2020, Appellant filed his Reply Brief.

---

[37] *Id.*

[38] *Id.* at 6–7.

[39] *Id.* at 7.

[40] *Id.*

[41] Due to the COVID-19 pandemic, there were delays in receiving the full record from proceedings below.

## II. PARTIES' CONTENTIONS

Appellant asserts that the Hearing Officer abused his discretion and violated due process when the text exchange between Appellant and D.P. that was entered into evidence was allegedly incomplete.[42]  Appellant also contends that D.P. should

---

[42] Opening Brief, at 23–26.  Appellant does not explain what was missing or should have been included.  The text message exchange that became an exhibit is as follows:

[Appellant's message] - *Hi D[redacted]. Richard. Lovely seeing you again. You're a very unique person. I think it would be wise to document changes in a daily narrative. I'm concerned about the loss of time and focus. Has there been a recent MRI? I surmise the probability of vascular dementia, but there are many subgroups. Keep her writing recent events and things to recall. She's also characterologically hypochondriacal and takes ironic joy in recounting her challenges. As though they are part of her triumphs. Please feel free to reach out anytime you need some contact and support.*
*Caregivers also need care and that gets missed.*

[D.P.'s message] - Yes I understand! The lose [sic] of time I just noticed last night, in that sense. We are always late to everything and when I try and tell her. She just gets nasty and mad. I will make sure she keeps writing things. Her family is coming up this weekend. So I am sure she will have a lot more to talk about.
Also thanks for the concern. Between her and my family there is no time for me! But Thank you see you Wednesday at 11:30 haha.

[Appellant] - *The nasty response is a medical sign of dementia. I hope it's not inappropriate for me to express my admiration and concern for you. You need and deserve self time to let go and be a woman. And companionship. I know what alone is like. My wife has lived in Illinois for 7 years caring for her parents so I guess you and I have being a single parent thing in common. So I am very sympathetic.*

[D.P.] - Now I feel bad when I get smart back to her! Lol! Thanks for that info. Yeah I get told all the time from everyone to take care of myself. I have recently started doing some stuff. When I decided to become a mother
to me that meant putting my kids above everyone even myself.

Especially having two kids that have needs. So I know it looks like to [sic] much to everyone else but that's who I am. Thanks for the concern.

[Appellant] - *Having meaningful work fills the void so you're doing great work with*

10

have testified.[43]

Appellant also argues that the Board committed legal error when it improperly rejected the defense of laches,[44] incorrectly found that there was substantial evidence to support the finding that Appellant violated the Ethics Code Directives,[45] and wrongly rejected the Hearing Officer's recommended punishment of suspension followed by probation.[46]

In response, the Board argues that Appellant was afforded due process because he had the opportunity to be heard, examined the evidence, and presented testimony during the hearing.[47] Additionally, the Board writes that Appellant's laches defense was properly rejected,[48] the deliberations were an "orderly and logical

---

*[D.S.] for her and you. I went through this with my parents. They get very frightened to observe they're [sic] own decline.*

*Who you are is perfect and needs no changes. I'm the same kind of parent. And now a grandparent. I get it. Maybe we can talk privately as I wouldn't want to discuss too much by text. Maybe come in sometime to discuss management issues.*

[D.P.] - Yeah maybe. gotta [sic] go thanks! Goodnight

[43] Reply Brief, at 10.

[44] *Id.* at 17–22.

[45] *Id.* at 26–31.

[46] *Id.* at 31–35.

[47] Answering Brief, at 24.

[48] *Id.* at 18–23.

deductive process,"[49] the Board properly considered Appellant's prior misconduct and discipline as an aggravating factor,[50] and there is substantial evidence to support the Board's finding that Appellant violated the Ethics Code directives.[51]

## III. STANDARD OF REVIEW

The Administrative Procedures Act ("APA") vests this Court with jurisdiction over appeals from a final order of the Board.[52] The Supreme Court and this Court have repeatedly emphasized the limited appellate review of an administrative agency's factual findings.[53] The Board's final order must be affirmed if it is supported by substantial evidence and free from legal error.[54] Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[55]

---

[49] *Id.* at 36–39.

[50] *Id.* at 32–36.

[51] *Id.* at 27–36.

[52] 29 *Del. C.* §§ 10142, 10102(4).

[53] *Bezilla v. Bd. Med. Licensure & Discipline*, 2012 WL 2700485, at *2 (Del. Super. June 29, 2012).

[54] *Conagra/Pilgrim's Pride, Inc. v. Green*, 2008 WL 2429113, at *2 (Del. June 17, 2008); *Jordan v. Bd. of Pension Trs. of Del.*, 2004 WL 2240598, at *2 (Del. Super. Sept. 21, 2004); *King v. Bd. of Pension Trs. of Del.,* 1997 WL 718682, at *3–4 (Del. Super. Aug. 29, 1997).

[55] *Lehto v. Bd. of Educ. of Caesar Rodney Sch. Dist.*, 962 A.2d 222, 225–26 (Del. 2008).

Though preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[56]

Additionally, the Court takes into account the Board's specialized competence and the purpose of the law under which the Board acted.[57] The Court does not weigh the evidence, determine credibility, or draw its own factual findings or conclusions.[58] An administrative appeal record must be viewed in the light most favorable to the prevailing party below.[59] Questions of law are reviewed *de novo*.[60] Furthermore, the Board's decision will be affirmed if its findings and conclusions are sufficiently "supported by the record and are the product of an orderly and logical deductive process".[61]

---

[56] *Breeding v. Contractors–One–Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[57] 29 *Del. C.* § 10142(d).

[58] *Janaman v. New Castle Cnty. Bd. of Adjustment*, 364 A.2d 1241, 1242 (Del. Super. Aug. 19, 1976).

[59] *Thomas v. Christiana Excavating Co.,* 1994 WL 750325, at *5 (Del. Super. Nov. 19, 1994).

[60] *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998)

[61] *Mentor Graphics Corp. v. Shapiro*, 818 A.2d 959, 963 (Del. 2003).

## IV.   DISCUSSION

### A.   The Board's Reliance on the Hearing Officer's Discretion to Admit the Text Message Exchange Was Not a Violation of Due Process

Appellant contends that he was denied due process because the Hearing Officer allowed into evidence an e-mail between himself and D.P. that contained an allegedly incomplete text message exchange and that the Board considered that exhibit.[62]

Professional licensing board proceedings are governed by both the requirements of due process and the Administrative Procedures Act.[63]   "In the exercise of quasi-judicial or adjudicatory administrative power, administrative hearings, like judicial proceedings, are governed by fundamental requirements of fairness which are the essence of due process, including fair notice of the scope of

---

[62] Appellant claims that the text message exchange that was entered into evidence could be misconstrued and "interpreted as inappropriate".  Opening Brief, at 25.  However, Appellant did not identify or present any allegedly missing text messages. Appellant's claim is unsubstantiated and unsupported.  Transcript, at 381-82; Answering Brief, at 25-26.

To the extent Appellant complains that the Board relied on an incomplete text exchange admitted during the hearing, this Court finds that the Board's decision was not a violation of due process. The text exchange, occurring during the period of time that D.S. was his patient and while D.P. was a caregiver for D.S., was professionally inappropriate and Appellant has not explained what allegedly omitted text(s) could have made the text message exchange appropriate.

Additionally, Appellant argues that the exhibit, without D.P.'s testimony, is "pure hearsay." Reply Brief, at 10. However, "It is well settled in Delaware that hearsay evidence is permissible in administrative hearings . . . ." *Husbands v. Del. Dep't of Educ.*, 227 A.3d 558 (Del. 2020) (citing *Larkin v. Gettier & Assoc.*, 1997 WL 717792, at *3 (Del. Super. Nov. 14, 1997)).  Thus, the Board did not err in considering the exhibit.

[63] 29 *Del. C.* Ch. 101.

the proceedings and adherence of the agency to the stated scope of the proceedings."[64] Pursuant to the APA, professional licensees who face an administrative disciplinary hearing must be afforded notice; opportunity to subpoena witnesses; and the rights to present evidence, be represented by counsel, and to appear personally or by a representative.[65]

Procedural due process is satisfied when "accomplished by a method reasonably calculated to afford the party an opportunity to be heard."[66] In *Bell Atlantic–Delaware, Inc. v. Public Service Commission*, the Delaware Supreme Court set forth the elements that an administrative hearing must meet to satisfy a respondent's right to procedural due process:

> [D]ue process as it relates to the requisite characteristics of the proceedings entails providing the parties . . . with the opportunity to be heard, by presenting testimony or otherwise, and the right of controverting, by proof, every material fact which bears on the question of right in the matter involved in an orderly proceeding appropriate to the nature of the hearing and adapted to meet its ends. This court has also held that due process requires that the notice inform the party of the time, place, and date of the hearing and the subject matter of the proceedings.[67]

---

[64] *Carousel Studio v. Unemployment Ins. Appeal Bd.*, 1990 WL 91108, at *1 (Del. Super. June 26, 1990).

[65] 29 *Del. C.* § 10122; 29 *Del. C.* § 10125(5).

[66] *PAL of Wilmington v. Graham*, 2008 WL 2582986, at *4 (Del. Super. June 18, 2008) (citations omitted).

[67] 705 A.2d 601, 605 (Del. 1997) (internal citations omitted).

As such, Appellant must establish that the Hearing Officer's decision to admit the e-mail containing the text message exchange between himself and D.S.'s caregiver deprived Appellant of the right to be adequately informed of the nature of the charges against him which prejudiced his ability to defend against the charges.[68]

Here, although not required,[69] Appellant and his attorney had been given a copy of the text message exchange prior to the hearing.[70] There had been an evidentiary hearing, the Investigator testified at the evidentiary hearing concerning the circumstances of the Investigator's possession of the text message exchange (she received a copy of the text message from D.S. via e-mail), and Appellant had an opportunity to examine the evidence.[71] Appellant was on notice of the contents of the text message exchange, the text message exchange was relevant, the exchange

---

[68] *J.L.B. Corp. v. Del. Alcoholic Bev. Control Comm'n*, 1985 WL 189008, at *2 (Del. Super. June 7, 1985); *see also In re Gresick*, 1988 WL 116411 (Del. Super. Nov. 2, 1988).

[69] In *Kotler v. Board of Medical Practice*, this Court held that "while pre-hearing discovery is available in proceedings before the Board, the appellant is incorrect in his assumption that he has an absolute due process right to engage in such discovery as a matter of course." 1993 WL 54587, at *4 (Del. Super. Jan.19, 1993).

[70] Appellant admits that he initiated the text message exchange.

[71] D.S. testified that her husband took the phone containing the text message exchange to his office, had someone copy it from the phone, it was transferred to a computer so that it could be e-mailed, and it was then emailed to the Investigator. Transcript at 114-17; 184-85; 231-32 (Oct. 23, 2019).

was professionally inappropriate, and the Hearing Officer did not abuse his discretion by admitting it into evidence.[72]

**B.      The Board Did Not Deprive Appellant of his Due Process Rights When, Absent D.P.'s Testimony, Appellant Was Found to be in Violation.**

Appellant's due process rights were not violated in the absence of D.P.'s testimony.  The Board determined that there was substantial evidence to support the conclusion that Appellant's unprofessional behavior breached his duty to respect D.S.'s confidentiality.  Moreover, the Board rejected Appellant's claim that D.P. had allegedly been present during the entirety of D.S.'s sessions and therefore privy to D.S.'s confidential information.  The Board agreed with the Hearing Officer's findings that, based on testimony, D.P. was not present during the entirety of D.S.'s sessions or during D.S.'s confidential sessions with Appellant.  Furthermore, the Board noted that any caregiver exception in 16 *Del. C.* § 1212 did not supersede D.S.'s affirmative directive to Appellant specifically naming those authorized to receive confidential information (and did not include D.P.'s name).  The Board did not commit legal error when it found that Appellant breached D.S.'s confidentiality in violation of Directive 1.

---

[72] Furthermore, even if additional texts actually existed, Appellant's argument must still fail. Under Delaware Rules of Evidence, D.R.E 106 states, in pertinent part, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."  However, Appellant did not offer any other part of a writing, any other writing, or any recorded statement for the Hearing Officer to fairly consider.

17

## C. The Board Did Not Commit Legal Error in Rejecting Appellant's Claim of Laches

Laches is an affirmative defense and generally requires the establishment of three things: "knowledge by the claimant, . . . unreasonable delay in bringing the claim, and resulting prejudice to the defendant".[73] The existence of these three elements is generally determined by a fact-based inquiry.

Here, Appellant argued that laches applied as to the A.P. incident in 2000. Appellant contends that he was prejudiced by the delay because his attorney's file from his criminal prosecution was no longer available. The Board found that laches did not apply because the delay was not unreasonable (although it was "excessive"). A.P.'s complaint had been a public record for approximately 19 years and the Board found that the only legal precedent considered by the parties or Hearing Officer concerning length of delay involved a 22-year delay where laches did not apply.[74]

It also found that Appellant did not suffer prejudice.[75] Although Appellant's attorney's file was no longer available, Appellant was aware of the gravamen of the complaint and had not contested it facts when (with the assistance of an attorney) he

---

[73] *Reid v. Spazio*, 970 A.2d 176, 183–84 (Del. 2009) (citations omitted).

[74] *Id.*; *see In re Tenenbaum*, 918 A.2d 1109 (Del. 2007); *Kotler v. Bd. of Med. Practice*, 630 A.2d 1102 (Table) (Del. 1993); *Bash v. Bd. of Med. Practice*, 579 A.2d 1145, 1152–53 (Del. Super. 1989).

[75] Board Order, at 5.

pled no contest.[76] Additionally, A.P. had made contemporaneous notes of the text message exchange and reported Appellant's conduct to the police almost immediately after the event.[77]

The Board also commented that there is no legal precedent for barring an administrative complaint under the doctrine of laches.

The Court finds that substantial evidence supports the Board's finding that Appellant failed to allege facts that would support "actual prejudice".

**D.     The Board's Decision is Supported by Substantial Evidence Because a Reasonable Mind Might Accept that Appellant Violated the Ethics Code Directives**

The Board, as the fact finder, reviews the testimony and issues its opinion. This Court is not a fact-finder in an appeal from an administrative board.[78]   On appeal, the Court's responsibility is to assure that the Board's decision did not go against the weight of the evidence.[79] Thus, unless this Court finds that the Board's opinion cannot be supported, the decision of the Board will be affirmed.

---

[76] *Id.* The Board noted that Appellant's current argument (that his attorney's file may have contained exculpatory or mitigating evidence) contradicts Appellant's no contest plea.

[77] *Id.* The Board also mentioned that it did not consider Appellant's failure to report his criminal charge on his license renewal applications because there was no evidence that previous renewal applications included a question about criminal charges.

[78] *Bernhard v. Phoenix Mental Health*, 2004 WL 304358, at *1 (Del. Super. Jan. 30, 2004) (internal citations omitted).

[79] *Hall v. City of Wilmington*, 1978 WL 186829, at *2 (Del. Super. Jan.27, 1978).

Here, the Hearing Officer's Recommendation, upon which the Board relied, was thorough, well-reasoned, and free from factual error. Additionally, contrary to Appellant's accusation, the record reflects that the Board did not fail to "read and comprehend" the Hearing Officer's Recommendation or fact findings.[80] As such, "The findings of fact made by a hearing officer are binding upon the board or commission".[81]

The Court finds that A.P.'s contemporaneous notes, Appellant's acknowledgment of the facts, and Appellant's plea of no contest constitute substantial evidence to support the Board's finding that Appellant violated Directives 8, 11, and 13 when he called A.P. and sexually harassed her.[82]

As to the incident involving D.S., there was substantial evidence supporting the Board's finding that Appellant breached his confidentiality duty when he revealed D.S.'s issues to an unauthorized person without first obtaining D.S.'s consent.[83] The text message exchange was undisputed, Appellant admitted to

---

[80] Opening Brief, at 34.

[81] 29 *Del. C.* § 8735(v)(1)d.

[82] Appellant does not raise any specific arguments pertaining to the Hearing Officer's or the Board's findings or conclusions about A.P.

[83] The Board rejected Appellant's argument that he was authorized to speak with D.P. about D.S.'s confidential information allegedly because D.P. was present throughout entire counseling sessions and under 16 *Del. C.* § 1212. The Board determined that the Hearing Officer clearly found that D.P. was not present during the entirety of D.S.'s sessions or during the discussions regarding D.S.'s confidential information.

sending it to D.P., and the text clearly contained Appellant's diagnoses or preliminary diagnoses concerning D.S. Furthermore, D.P. did not have a "couples" or "family" relationship with D.S., Appellant did not claim the existence of such a relationship between the two women in his records, D.P. was never processed as an actual client or patient, and Appellant explicitly acknowledged that D.P. was solely a caregiver.

As to D.P., there also was substantial evidence that Appellant's text message exchange to his client's caregiver (where he told her to "let go and be a woman", bemoaned the difficulty of being alone, referenced the need for "companionship", and suggested that she "privately" meet him at his office) were offensive and discomforting.[84]

Concerning the decision to revoke Appellant's license instead of the recommended license suspension and probation, the Board considered Appellant's disciplinary history since 2010 which consisted of probations and a previous suspension. The Board relied on the following facts: In 2010, Appellant was disciplined by the Board for revealing confidential information about a patient to her spouse (after the patient accused him of unprofessional conduct during a session) and he was placed on probation; while on this probation, there was a 2011 matter involving an inappropriate romantic relationship with a female patient; and also

---

[84] Recommendation, at 76–77.

21

while on probation, Appellant pled guilty, after arrest, to being inappropriately attired on a Delaware beach.[85] Additionally, Appellant's license had been suspended from August 2011 to October 2012.[86]

The Board found that Appellant's long-standing pattern of unethical behavior and conduct was "clearly outside of the bounds of appropriate counselor behavior."[87] As such, the Board determined that the Hearing Officer's recommended discipline (another suspension and more probation) was insufficient and the Board unanimously voted to revoke Appellant's license. Based on these facts, the Court finds that there is substantial evidence to conclude that Appellant violated the Ethics Code Directives and that license revocation was appropriate.

The Board did not err in light of prevailing Delaware law and the guidelines set forth in the APA. The Board based its decision on uncontroverted evidence that Appellant's misconduct (separately or collectively) was unprofessional, violated the Ethics Code, and was grossly inappropriate.

The Board's Order properly concluded that the Hearing Officer's Recommendation was thorough, well-reasoned, supported by substantial evidence, and was otherwise free from legal error. The Board's decision to revoke Appellant's

---

[85] *Id*. at 1.

[86] Board's Order, at 1.

[87] *Id.* at 6.

license, has a substantial and rational basis, is supported by substantial evidence, and is well within its discretion.

Accordingly, the Board's Decision concerning Appellant's misconduct and that Appellant was not amenable to the lesser sanctions of suspension and probation are supported by substantial evidence and free from legal error.

**NOW, THEREFORE,** the Board's Decision is hereby **AFFIRMED.**

**IT IS SO ORDERED.**

*/s/ Diane Clarke Streett*_____
Diane Clarke Streett, Judge